# Commonwealth *v.* Keary.

*Criminal law—Ticket scalpers—Constitutional law—Act of* 1863—*Police power.*

The Act of May 6, 1863, P. L. 582, to prevent fraud on travelers is within the police power and is constitutional. It does not abridge any privilege or right secured to citizens either by the constitution of the United States or by that of the commonwealth; nor does it deprive any of property without due process of law.

The opinion by LUDLOW, J., 14 Phila. 384, cited and approved; authorities in other states collated and reviewed.

Argued Oct. 2, 1899. Appeal, No. 40, April T., 1900, by defendant, in suit of Commonwealth of Pennsylvania, against Edward P. Keary, from sentence of Q. S. Allegheny County, March Sessions, 1899, No. 128, on verdict of guilty. Before RICE, P. J., BEAVER, ORLADY, SMITH, W. W. PORTER and BEEBER, JJ. Affirmed. Opinion by W. W. PORTER, J.

Indictment under Act of May 6, 1863, P. L. 582, to prevent frauds upon travelers. Before McCLUNG, J.

The facts sufficiently appear in the opinion of the court.

Verdict of guilty and sentence thereon. Defendant appealed.

*Errors assigned* among others were (4) in refusing defendant's first point, which was as follows: "1. That the act of assembly of May 6, 1863, entitled 'An act to prevent frauds upon travelers' and the supplements thereto, under which the indictment in this case is based, is unconstitutional and void in this, that it contravenes the bill of rights contained in the constitution of the state of Pennsylvania, and the provision of the fourteenth amendment of the constitution of the United States and the constitution of the United States giving to congress all powers with reference to intestate commerce. *Answer:* Refused." (5) In refusing defendant's second point, which point and answer are as follows: "2. That the acts of assembly referred to are unconstitutional in this, that they attempt to make that a crime which is not; and in this case, that the evidence expressly shows that the tickets alleged to have been sold were valid tickets issued by the railroad com-

pany. *Answer:* Refused." (6) In refusing defendant's third point, which point and answer are as follows : " 3. That the acts of assembly in question are an attempt to create a monopoly and assume power not of a legislative nature. *Answer:* Refused." (7) In refusing defendant's fourth point, which point and answer are as follows : " 4. That the act is not a police regulation or within the police powers of the commonwealth of Pennsylvania. *Answer:* Refused."

*J. S. Ferguson*, with him *E. G. Ferguson* and *Josiah Cohen*, for appellant.—We contend that this act of assembly is unconstitutional. It is an attempted exercise of the police power of the state in violation of the principles upon which that power rests.

It is unconstitutional because it deprives the defendant and others in like case of rights and privileges secured to a citizen of the state, and because it abridges his privileges and immunities as a citizen of the United States, and denies to him the equal protection of the laws.

It is likewise unconstitutional because it deprives him of his property without due process of law.

It is likewise unconstitutional because it amounts to a regulation of commerce among the several states by the legislature of the state of Pennsylvania.

If further offends the constitution of the state of Pennsylvania because it is practically an abdication of governmental functions in favor of private individuals and corporations.

The police power is generally grounded on disaster, fault or necessity : Philadelphia v. Scott, 81 Pa. 80.

To cut up, root and branch, a business that may be honestly conducted to the convenience of the public and the profit of the persons engaged in it is beyond legislative power: People v. Warden, 157 N. Y. 116, 132.

The appellant is deprived of rights and privileges secured to a citizen of the state, and his privileges and immunities as a citizen of the United States are abridged and the equal protection of the law is denied him.

The act is likewise unconstitutional because it amounts to a regulation of commerce among the several states by the legislature of the state of Pennsylvania.

The act offends the constitution of the state of Pennsylvania because it is practically an abdication of governmental functions in favor of private individuals and corporations.

The whole act utterly disregards the convenience of the citizen.

*Clarence Burleigh*, with him *John C. Haymaker*, district attorney, for appellee.

OPINION BY WILLIAM W. PORTER, J., July 26, 1900:

The defendant admits that he carried on the business of buying and selling railroad tickets in the city of Pittsburg. In defense, he challenges the constitutionality of the act of May 6, 1863, under which his conviction was had. The question has been raised, heretofore, directly but once in Pennsylvania, and then flatly decided. The late Judge LUDLOW, of Philadelphia county, in Commonwealth v. Wilson, 14 Phila. 384, filed in 1880, an opinion covering the entire case now presented to us. This opinion seems to have satisfied the minds of the profession for twenty years. Now, however, the identical question is reopened. The act is nearly two score years old, and has been the ground of action in many courts in many cases. True, lapse of time will not obliterate from legislation the stamp of unconstitutionality, but something may be predicated of it in favor of constitutionality.

In Sleeper v. Penna. R. R. Co., 100 Pa. 259, it was held that the act of 1863 did not preclude recovery in the case of a purchaser of a railroad ticket from an unauthorized agent outside of the state, where the railroad company refused to carry the passenger. But the validity of the act and the operative force of its provisions were tacitly conceded. The legislation thus passed under the eye of the Supreme Court without challenge as to its constitutionality. In view of this fact and of the age of the act, the language of Mr. Justice MITCHELL, in the recent case of Sugar Notch Borough, 192 Pa. 349, is peculiarly apt in application to the case in hand. He says, in speaking of the borough act of 1887: "It has been in operation for twelve years, has been twice previously before this court, and has been the ground of action many times before other courts without objection to its constitutionality. It is

rather late now to question it. While these circumstances are not conclusive in its favor, yet they are a strong argument that it is not so plainly repugnant to the constitution as it must be to require a court to overturn an act of the legislature." It is furthermore to be recalled that nothing but a clear violation of constitutional provisions—a manifest attempt to exercise prohibited power—will justify the judicial department in declaring unconstitutional, and thereby nullifying, legislative action: Powell v. Commonwealth, 114 Pa. 265; Penna. R. R. v. Riblet, 66 Pa. 164. Upon him who denies the constitutionality of legislation lies the burden of demonstration.

The appellant contends that the act, under which he was convicted, is in violation of the fourteenth amendment of the constitution of the United States, which declares that "no state shall make or enforce any law which shall abridge the privileges or immunities of the citizens of the United States; nor shall any state deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws." Again, he contends that the act is in derogation of the rights "of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness," declared by the state constitution to be "inherent and indefeasible." He also asserts that the act violates the constitution of the United States in that the act impairs "the obligation of contracts," and "is an attempt to regulate commerce . . . . among the several states."

These contentions raise large questions. Were they new, the temptation would be strong and the duty plain to discuss them with considerable elaboration. We have seen, however, that in Pennsylvania they have long ago been considered at length and carefully determined in an opinion by a judge of recognized ability. Further than this, acts substantially the same in provision have been adopted in other states. These have been directly passed upon by many courts. In every case all or some of the same questions as those here raised, have been reviewed in detail with manifest care and at great length. In all of the adjudicated cases, save one, the acts have been declared constitutional, and their provisions upheld. It

is believed that at the expense of some labor, all of the reported
cases have been collected and examined by us, in which the
question here involved has been considered.    They are as
follows: Commonwealth v. Wilson (1880), supra; Fry v. The
State, 63 Indiana, 552, (1878); State v. Corbett, 57 Minnesota,
345, (1894); Burdick v. People, 149 Illinois, 600, (1894); The
People v. The Warden of the Prison, 157 N. Y. 116, (1898);
Jannin v. The State, 51 S. W. Rep. 1126, (Texas, 1899); Nash-
ville, etc., R. R. v. McConnell, 82 Fed. Rep. 65, (C. C. Tennes-
see, 1897), and see State v. Bernheim, 49 Pac. Rep. 441, (Mon-
tana, 1897).   All of these cases are in substantial accord, the
case of The People v. The Warden of the Prison, supra, being
the exception.   In that case, the appellate division of the Su-
preme Court of New York, apparently unanimously, held the
act, then under review, to be constitutional.   On appeal the
judgment was reversed.   In the opinion of the court of appeals,
written by the chief justice, three of the associate justices con-
cur.   The remaining three of the associate justices dissent,—
two of them filing dissenting opinions.   In that case, under the
construction put upon the act by the court, a duly constituted
agent of one railroad company had power to buy and sell tickets
of other carriers.   It will be seen that the Pennsylvania act con-
tains no provision susceptible of the construction upon which the
majority of the court of appeals of New York have, in large meas-
ure, based their conclusions and decree.   It is, therefore, not nec-
essary to concede that this New York case is an authority in favor
of the appellant's contention in the case before us.   In view,
then, of these reported adjudications, with their wealth of dis-
cussion, it seems unnecessary to rehearse the reasoning by
which the courts have been led to an almost unanimous con-
clusion that acts of the character of that before us are not
violative of constitutional inhibition, but are within the police
power of the state.   The reasoning runs in all of the cases
along the same lines.   We need but add the conclusions which
impel us to affirm the judgment of the court below.

The act does not impair " the obligation of contracts," since
the contracts alleged to be affected by the act had no existence
until nearly forty years after its passage.   The act does not
violate the constitutional provision respecting interstate com-
merce.   It is not an attempt to make a rule affecting inter-

state commerce. It is a police regulation affecting the person and conduct of those attempting to do certain acts which have been forbidden under penalty. "Legislation may in a great variety of ways affect commerce and persons engaged in it without constituting a regulation of it within the meaning of the constitution:" Hall v. DeCuir, 95 U. S. 485. The act is not in violation of the provisions of the fourteenth amendment. "Neither the amendment, broad as it is, nor any other amendment was designed to interfere with the power of the state, sometimes termed the police power, to prescribe regulations to promote the health, peace, morals, education and good order of the people:" Barbier v. Connolly, 113 U. S. 27. The act of 1863 does not abridge any privilege or right secured to citizens, either by the constitution of the United States or by that of the commonwealth; nor does it deprive any of property without due process of law. It does not deprive the holder of a railroad ticket of the unused portion of it. It regulates the sale and requires the company issuing to buy. The regulation may, in some cases, result in the holder receiving less than would be paid by an individual buyer. On the other hand, the act gives to the holder of an unsalable, unused portion of a ticket a customer in the company issuing it. The purchaser of a railroad ticket takes it subject to such reasonable restrictions as the law may impose upon the public business of the carrier. The purpose of the act is to prevent fraud. It is recited in the preamble that, "whereas numerous frauds have been practiced upon unsuspecting travelers by means of the sale, by unauthorized persons, of railway and other tickets," the appellant is not in the position of one innocently selling an unused portion of a ticket bought in good faith. He is confessedly conducting a business at which the act of assembly directly strikes, and which the legislature has said is prolific of fraudulent results. The appellant is not deprived of any property of which he is honestly the owner, nor is he prevented from prosecuting a business of a kind recognized by the law as respectable. The privileges and immunities protected by the constitution are subject to such restraints as the government may prescribe for the general good of the whole people. The appellant has, therefore, no right to complain of the restriction put upon his business, which has been stigmatized as conducive to fraudulent acts and practices.

To those not familiar with the evils which have led the legislatures of Pennsylvania and other states, to pronounce the business of a " ticket broker " or " ticket scalpers " fraudulent and punishable, the examination of the reports of the Inter-State Commerce Commission is interesting and instructive. See 2 Inter-State Commerce Reports (Co-op. ed.), p. 345 ; vol. 3, p. 363. An excerpt from the last citation may be found in Ray on Passenger Carriers, sec. 138. The facts and figures given are astounding. They are too voluminous to embody here. The impression made on the minds of the commission is evinced by the expressions contained in the annual report for 1890 (p. 364). Some of them are as follows : " In whatever aspect ticket scalping may be viewed, it is fraudulent alike in its conception and in its operations . . . . Fraud, therefore, is the incentive to the business . . . . One might suppose that a practice of this character could no more be defended than larceny or forgery, but, strange as it may appear, it is defended before legislative bodies, and elsewhere, and the right to carry it on unmolested is demanded." While to the legislative body may be conceded a large discretion in pronouncing upon the moral character of the acts, in respect to which they have legislated, yet is the corroboration of their judgment acceptable from a source created by national authority with national opportunity and obligation to obtain accurate information. Their reports further show that, the evil appearing great, the commission have, on more than one occasion, advocated the passage of legislation by congress, not differing greatly from the Pennsylvania act, in order that the business of the ticket broker might be stamped out by national authority.

Finding no error committed by the court below, the judgment is affirmed and the record is remitted that the sentence imposed by the court below may be carried out.