F. S. Allen *et al.* v. Daniel T. Hopkins *et al.*

No. 11,657. (61 Pac. 750.)

1. Abstracters—*Not Public Officers.* Chapter 1, Laws of 1889, "An act for the protection of the records of the several counties of the state of Kansas, and regulating the business of abstracting in relation thereto," does not create the business of abstracting into a public office, nor constitute the abstracter a public officer.

2. ———— *Title of the Act.* The words "in relation thereto," constituting the final clause in the title to the above-mentioned act, are meaningless. Their use was a legislative inadvertence, and they should be eliminated in reading and construing the title to the act.

3. ———— *Act Constitutional.* The above-mentioned act does not contain more than one subject and the title to it, with the above-quoted meaningless clause eliminated, clearly expresses a single subject, and is therefore not repugnant to section 16 of article 2 of the constitution.

4. ———— *Findings Construed.* Findings of the jury quoted in the opinion and held to show privity of contract between the parties.

5. ———— *Bond Construed — Sureties Estopped by Recitals.* A bond required by statute for purposes of public indemnity was given by a partnership composed of two members, the style of which was, "The Boyden Abstract Company." The body of the bond designated the partnership by such name and style, and it was signed in the same way. The partnership was also designated, both in the body of the bond and by its signature, as "principal." One of the partners signed the firm name to the bond by himself as "president," and the other attested it as "secretary." Both signed their individual names to the bond, but in the body of it designated themselves as "sureties." *Held,* that such instrument purported upon its face to be the bond of a corporation, and not of a partnership; that the matters above mentioned are in the nature of recitals of the character of the obligation as a corporation bond; and that persons not members of the partnership, who signed themselves as sureties on the bond, are estopped to deny the truth of the recitals.

6. ———— *Extension of Time — Sureties not Released.* Sureties liable on the bond of an abstracter of titles to a purchaser of land for the omission from the abstract of an outstanding mortgage on the land are not discharged by an extension of time granted by the vendee to the vendor to make good his covenants of warranty against encumbrances contained in his deed.

Error from Reno district court; MATTHEW P. SIMP-SON, judge.  Opinion filed July 7, 1900.  Affirmed.

*Leland & Harris,* and *Madden & Buckman,* for plaintiffs in error.

*John D. Milliken, H. Whiteside, G. P. Aikman,* and *Hamilton & Leydig,* for defendants in error.

The opinion of the court was delivered by

DOSTER, C. J. : This was an action on a bond, required by statute, of a firm of persons engaged in the business of making abstracts of real-estate titles.  Verdict and judgment were rendered for the plaintiffs, to reverse which the defendants have prosecuted error to this court.

The first claim of error involves a question of jurisdiction, under the statute, over the defendants, and the second one involves the construction of the statute and the application of a constitutional provision to it.  The act in question is chapter 1, Laws of 1889. (Gen. Stat. 1897, ch. 117, §§ 35–39; Gen. Stat. 1899, §§ 1189–1192.)  In order to a consideration of the claims of error mentioned, the title and first section of the act are quoted, and a summary of other sections given.

"An act for the protection of the records of the several counties of the state of Kansas, and regulating the business of abstracting in relation thereto. "

"SECTION 1.  It shall be unlawful for any person, firm or corporation to engage in the business of abstracting, or make abstracts of title to real estate in any of the counties of the state of Kansas, without first having executed and filed with the clerk of the county in which said person, firm or corporation intends to engage in the business of abstracting, a

bond, to be approved by the board of county commissioners of said county, with three or more good and sufficient sureties, in the penal sum of $5000, conditioned that they will properly demean themselves in the business of abstracting, and will in no way mutilate, deface or destroy any of the records of the several county offices to which they may have access, and that they will not in any way interfere with, hinder or delay the several county officers in the discharge of their duties while using said records in the prosecution of said business of abstracting; provided, however, that the records shall in no case be taken from the county office to which they belong.   The person, firm or corporation who shall execute and file said bond of $5000 for said purpose shall be liable on said bond : First, to the state of Kansas ; second, to any person who shall be in any way damaged by any mutilation, injury or destruction of any record or records of the several county offices to which he or they may have access, to the amount of damage actually done said person ; and third, said person, firm or corporation shall be liable on said bond to any person or persons for whom he or they may compile, make or furnish abstracts of title, to the amount of damage done to said person or persons by any incompleteness, imperfection or error made by said person, firm or corporation in compiling said abstract.   And the filing of said bond shall be a guaranty of the good faith and responsibility of said person, firm or corporation engaged in said business of abstracting."

Section 2 provides that, upon the filing of the bond required by section 1, the abstracters shall have access to the various county records, under the supervision, however, of the county officers having the custody of such records, and that while using the records for their purposes such abstracters shall be under the same obligation as the officers themselves to protect and preserve them, and shall be subject to the same penalties as those to which the officers are subject for a violation

12—62 KAN.

of duty in respect to their care. Section 3 provides that no one shall engage in the business of abstracting without first executing and filing the bond required by section 1, and that all persons who engage in the business of abstracting without having first executed and filed the bond shall be deemed guilty of a misdemeanor, and shall be refused the use of the county records. Section 4 provides that county officers who refuse the use of their records to abstracters who have given the required bond shall be deemed guilty of a misdemeanor.

The bond sued on was given by a firm of abstracters in Butler county, and, as required by statute, was approved by the board of commissioners of that county. The suit, however, was brought in Reno county. Objection was made to the jurisdiction of the court in Reno county on the ground that actions on bonds given under the above-quoted statute are not transitory but are local to the county where the bond is filed and approved. This claim is predicated upon the theory that the statute creates the business of abstracting into a public office, makes the abstracter a public officer, and the bond given by him an official bond. If this claim be correct, the action was local to Butler county, because the civil code, General Statutes of 1897, chapter 95, section 44 (Gen. Stat. 1899, § 4294), provides that actions on official bonds and actions against public officers for acts done by them by virtue of or under color of their offices, or for a neglect of their official duties, shall be brought in the county where the cause of action, or some part of it, arose. Neither the cause of action sued on nor any part of it arose in Reno county. The claim of lack of jurisdiction, however, is unfounded. The

1. Abstracters are not public officers.

statute does not create the business of abstracting land titles into a public office nor make the abstracter a public officer. It only confers upon abstracters a right of access to the public records, and this it does for the private benefit and advantage of the abstracter, and it requires of him security to the public against the loss or mutilation of the records, and security to individuals for whom he undertakes to compile abstracts. He performs no public duty. He occupies no position of public trust. He is simply required to abstain from acts of injury to the public while pursuing his private business vocation, and to indemnify private individuals who suffer loss on account of his wrongful or negligent acts.

Under the second claim of error, it is contended that the act in question contains two subjects, or that, if it does not contain two subjects but only one, such 3. Act held constitutional. single subject is not clearly expressed in its title, and is therefore violative of article 2, section 16, of the constitution. One of these distinct subjects, it is said, is the protection of the public against interference by abstracters with the work of the county officers and against the mutilation or destruction of the county records. The other subject, it is said, is the protection of private individuals against loss caused by errors or incompleteness in compiling abstracts. This contention is not sound. There is but one single subject contained in the act, to wit, the subject of abstracting from the county records, and the liability of those who pursue abstracting as a business. The general subject of the act is the liability of abstracters. The specific topics of this general subject are, first, liability in the use of the records, etc., and, second, liability for errors and imperfections of abstracts when made.

Every one in the pursuit of a business vocation takes on relations both to the public and to private individuals, and becomes liable both to the public and to private individuals as he may fail in the discharge of his duty to one or to the other.  This duality of relationship, however, does not beget the necessity of separate statutory regulations.  In such case there is an integral whole, to wit, liability in the conduct of the business, of which liability to the public and liability to individuals are the elements or parts.

There being, therefore, but one subject in the act, the question next occurs, Is that subject clearly expressed in the title?  The title reads:
2. Words eliminated from title of act.  "An act for the protection of the records of the several counties of the state of Kansas, and regulating the business of abstracting in relation thereto."  The final clause in this title, "in relation thereto," confuses the question and renders it difficult.  What is the meaning of that clause?  In relation to what is the business of abstracting to be regulated?  Is it to be regulated in relation to "the records," or in relation to "the protection of the records," or in relation to both?  If the business of abstracting is to be regulated in relation to the records, or in relation to their protection, the liability of the abstracter to private individuals would seem to fall without the purview of the title, because the liability of an abstracter to a private individual for an incomplete or erroneous abstract would seem to bear no relation to the records from which the abstract was made or to the protection of such records.  To discuss the possible meaning of the clause in question in relation to all the other clauses, and to the words of the sentence, would involve an undertaking in grammatical, rather than legal, criticism, which, in the

end, would be fruitless. It is probable that grammarians would relate the clause, "in relation thereto," to the preceding clause, "for the protection of the records," so that a reconstruction of such parts of the sentence as concern us would make them read, "regulating the business of abstracting in relation to the protection of the records." The fact is, however, that, whatever meaning grammarians might give to the final clause of the sentence, the law can give no meaning to it. It is but another instance of that inartistically phrased legislation with which the statutes abound—legislation ordinarily honest enough in design, but so crude and bungling in forms of expression and so violative of all rules of composition as to be either impossible of comprehension or impossible of execution according to its spirit and intent.

In the case of *In re Hendricks*, 60 Kan. 796, 57 Pac. 965, we were compelled to declare an entire act of the legislature invalid because of its contradictory and meaningless provisions. In *Landrum v. Flannigan*, 60 Kan. 436, 56 Pac. 753, we were compelled to interpolate into a statute by construction words not written there, in order to give to it a meaning which the obvious sense of its other provisions showed it possessed. In *Brook v. Blue Mound*, 61 Kan. 184, 59 Pac. 273, we were obliged, in order to give meaning to the title of an act, to eliminate words which had been inadvertently used. We find ourselves compelled in this case to do the same thing. The final clause of the title we are considering has no meaning. None can be given to it. We therefore eliminate it and read the title as follows: "An act for the protection of the records of the several counties of the state of Kansas, and regulating the business of abstracting."

It is by no means a pleasant duty thus to rearrange

the verbal phraseology of an act of the legislature, and it should not be done if the doing of it can be avoided, but there is often no way by which our duty to uphold and cause the execution of acts of the legislature can be performed without transposing, interpolating and eliminating words and phrases, so as to give effect to the obvious legislative intent. The act under consideration is one of most excellent design. The business of abstracting real-estate titles is an important and responsible one, requiring skill, discernment, painstaking research, and conscientious purpose. It is proper to make it a subject of legislative regulation, and yet the statute which seeks to accomplish the object is crude and bungling in effort. For instance, that part of it which specifies the conditions of the bond requires that the obligor properly demean himself in the business of abstracting, and in no way mutilate any of the records, etc., and not in any way interfere with the county officers. If a common-law bond contained no other conditions than those, it would be difficult indeed to bring within its terms a case of damage to a private individual occurring through incompleteness or errors in abstracting. It could not be done unless the making of an erroneous abstract should be regarded as a failure by the abstracter to "properly demean" himself in the business of abstracting. A subsequent provision of the statute, however, attaches to the bond a liability on behalf of private individuals for incompleteness or errors in abstracts made. But that liability ought to be expressed in terms as one of the conditions of the bond. Again, the closing sentence of the first section reads: "The filing of the bond shall be a guaranty of the good faith and responsibility of said person, firm or corporation engaged in said business of abstracting."

This provision is absolutely meaningless. It contains nothing within itself—is not expressive of any obligation enforceable in the courts, nor does it aid to an understanding of any of the other provisions of the act.

A statement of some of the facts of the case will be necessary to an understanding of the third claim of error. Hopkins & Lamer were the owners of mill property in Saline county. One Newcom owned a tract of land in Butler county. See & Wells were real-estate agents at Salina, Saline county. They were agents for both Hopkins & Lamer and Newcom for the sale of their respective properties, and they negotiated an exchange of these properties between the owners. They ordered an abstract of the title to Newcom's land from the defendants, a firm of abstracters at El Dorado, Butler county. This abstract was incomplete and erroneous. It failed to show an outstanding mortgage of $2400. The exchange of properties was made by Hopkins & Lamer upon the supposition of the correctness of the abstract. Being damaged by its incorrectness to the extent of the mortgage, they brought suit against the abstract company. One of the defenses was lack of privity of contract between the plaintiffs and defendants. The contention of the defendants was that they had furnished the abstract to Newcom, the owner of the property the title to which they had abstracted, and not to Hopkins & Lamer, the owners of the mill property. If such were the case, it could not be said that privity of contract existed between the parties, and the defendants below, the abstract company, would not be liable. (*Mallory v. Ferguson*, 50 Kan. 685, 32 Pac. 410; *Savings Bank v. Ward*, 100 U. S. 195, 29 L. Ed. 621.) However, the jury trying the

4. Findings show privity of contract.

case were asked and made answers to interrogatories as follows :

"Ques. Did See & Wells order the abstract as the agents of Hopkins & Lamer as well as the agents of Newcom? Ans. Yes.

"Q. Did See & Wells, as the agents of Hopkins & Lamer and also of Newcom, order the abstract for the purpose of enabling Hopkins & Lamer to investigate the title to the land? A. Yes.

"Q. (2) Did Hopkins & Lamer rely upon the abstract in question as delivered to See & Wells? A. Yes.

"Q. Did Hopkins & Lamer notify See & Wells that they expected them to see that the title they got was a good and perfect one? A. Yes.

"Q. If you answer No. 2 in the affirmative, state if See & Wells ordered the abstract in question by direction of both parties in order to comply with the injunction of Hopkins & Lamer that they expected them to see to it that they got a good title? A. Yes.

"Q. Was the abstract in question ordered for the use and benefit of Hopkins & Lamer with the intention that the same should be delivered to See & Wells, and that See & Wells might pronounce judgment upon the title for the benefit of Hopkins & Lamer? A. Yes."

There was testimony to support these findings. They are therefore conclusive upon us. It is claimed, however, that the jury were influenced to make them by instructions erroneous and misleading in character. We have examined the instructions and believe them to be correct in point of law and not misleading in character. It would consume much time and space to set forth the instructions complained of and show the error of counsel's views, without, in the end, elucidating any legal principle of consequence.

A statement of further facts will be necessary to an

understanding of the fourth claim of er-
ror.   The bond in suit was executed,
filed, and approved by the county com-
missioners, in 1889.   It reads as follows :

5 Bond construed—sureties estopped by recitals.

"Know all men by these presents, that the Boyden
Abstract Company, of Butler county, Kansas, as prin-
cipals, and Vincent Brown, Robt. H. Hazlett, F. S.
Allen, M. H. Taylor, as sureties, are held and firmly
bound unto the state of Kansas in the sum of five
thousand dollars ($5000).   The conditions of this
bond are, that

"WHEREAS, The Boyden Abstract Company afore-
said is engaged in the business of abstracting or mak-
ing abstracts of titles to real estate in the county of
Butler, state of Kansas :

"Now, therefore, if the Boyden Abstract Company
aforesaid shall properly demean itself in the business of
abstracting, and shall in no way mutilate, deface or
destroy any of the records of any of the county offices
to which they may have access, and shall not in any
way interfere with, hinder or delay the several county
officers in the discharge of their duties, while using
said records in the transaction of said business of ab-
stracting, then this obligation to be void ; otherwise
to remain in full force and effect.

THE BOYDEN ABSTRACT COMPANY, *Principal*.
By F. S. ALLEN, *Pres*.

"Attest : M. H. TAYLOR, *Secy*.
"Vincent Brown, Robt. H. Hazlett, F. S. Allen, M.
H. Taylor."

The Boyden Abstract Company, for whom the above-
quoted bond was given, was, at the time of the execu-
tion of the instrument, a partnership between F. S.
Allen and M. H. Taylor.   Before the liability accrued
upon the bond, one Daniel Boyden became a member
of the partnership along with Allen and Taylor.   In
legal theory, this change of membership worked a dis-
solution of the old partnership and the creation of a
new one.   Vincent Brown and Robert H. Hazlett,

who had signed the bond as sureties for the Boyden Abstract Company, were unaware of the change of membership of the firm, and, as to themselves, they defended the action on the bond upon the ground that the change of membership released them from their obligation as sureties. They say that they became sureties for F. S. Allen and M. H. Taylor only, and cannot be held for a liability incurred by the new firm of Allen, Taylor & Boyden. There might be some force in this contention if the facts were not peculiar and exceptional. It will be observed that the bond in question has all the appearances of a bond executed by and on behalf of an incorporated company. The principal is named as "The Boyden Abstract Company." The statute requires that names of corporations shall commence with the word "the" and end with the word "corporation," "company," etc. (Gen. Stat. 1897, ch. 66, § 8 ; Gen. Stat. 1899, § 1212.) The beginning and ending of the name of this association comply with the requirements of the statute as to corporations. In the body of the bond the Boyden Abstract Company is designated as principal, and the two partners composing it are designated as its sureties. The bond is signed, "The Boyden Abstract Company, Principal, by F. S. Allen, Pres. Attest : M. H. Taylor, Secy.," and in addition to such signature and attestation both Allen and Taylor signed as sureties for the very concern of which they were the sole partnership members. It is unusual for a partnership to have a president and secretary. The officers are usual only to incorporated companies, and it is certainly unusual for the members of a partnership firm to sign a contract obligation as sureties for themselves.

No one looking at the above-quoted bond and unac-

Allen v. Hopkins.

quainted with the facts would suppose that the instrument was other than the obligation of an incorporated company, signed by its executive officers and by its sureties. It purports upon its face to be the bond of a corporation. The decisions are uniformly to the effect that institutions with names of a character like unto that of the concern in question will be understood to be corporations, in the absence of contrary knowledge. The name, "The Thomas Harrow Company," fairly imports a corporation. (*Seymour & Son v. The Thomas Harrow Co.*, 81 Ala. 250, 1 South. 45.) The name, "The Muskingum Manufacturing Company," implies a corporation. (*Harris v. The Muskingum Manufacturing Company*, 4 Blackf. [Ind.] 267.) The name, "The Cicero Hygiene Draining Company," denotes a corporation. (*Cicero Hygiene Draining Company v. Craighead*, 28 Ind. 274.) So, also, does the name, "The Indianapolis Sun Company." (*The Indianapolis Sun Co. v. Horrell*, 53 Ind. 527.)

The character of the bond in suit as the bond of a corporation is represented so strongly on the face of the instrument as to amount to a recital of it as a fact. Such being the case, the sureties are estopped to deny that the principal for which they signed possesses the character it represented itself to have and in which representations they joined to an equal extent. Sureties are favored in law, and they will not be held beyond the exact terms of the obligations signed by them ; but, on the other hand they, like other classes of obligors, are estopped to deny the recitals of obligations signed by them. (Brandt, Sur. & G. § 42 *et seq.*)

A further claim of error urged on behalf of the sureties is that plaintiffs, Hopkins & Lamer, granted an extension of time, upon consideration, to the abstract company, the effect of which was to release them as sureties

6. Sureties not released by extension of time.

from their obligation. The facts were that, upon discovery of the error in the abstract, Hopkins & Lamer induced Newcom, who was liable upon the covenants of the deed to them, to give security against the outstanding mortgage before mentioned. This security was in form of a second mortgage on lands in another part of the state. The security turned out to be worthless. Nothing was realized on it, but, if it had been otherwise, it cannot be said that an extension of time was granted to the abstract company. The extension was for six months, but it was to Newcom, and was of his liability alone. The security accepted was not even collateral to the liability of the abstract company, but was collateral to the liability of Newcom only.

The rulings of the court below were all correct, and its judgment is affirmed.