EVERS, APPELLANT, *v.* HUDSON, COUNTY TREASURER, RE-
SPONDENT.

36    135
f38    322

36    135
40    279

(No. 2,484.)

(Submitted November 11, 1907.  Decided November 18, 1907.) ·

[92 Pac. 462.]

*County Free High Schools—Special Elections—Statutes—Con-
struction—Title—Raising Revenue—Governor's Approval—
Election Proclamation—Notice—Statutory Requirements—
Taxes—Invalidity.*

Statutes—Title—Meaningless Words—Elimination—Constitution.
  1.  Meaningless words or phrases in the title of an Act may be dis-
carded by construction, and if, after such elimination, the title clearly
expresses the subject embraced in the Act, it is not objectionable to.
the provision of Section 23, Article V, of the Constitution, that the
subject of every bill shall be clearly set forth in its title.

Same—County Free High Schools—Title.
  2.  *Held,* that the title to Chapter 29, Laws of 1907, page 50, relating
to the establishment and maintenance of county free high schools,
is not so defective as to violate the provisions of section 23, Article
V, of the Constitution.  Omitting the meaningless portion found in
the latter portion of the title, it is clear and comprehensive, and
could not have been misunderstood by the legislature or the people.

Same—Title—More Than One Subject—Constitution.
  3.  In determining the question whether an Act offends against the
constitutional inhibition that no bill shall be passed containing more
than one subject (Const., Art. V, Sec. 23), the object sought to be
accomplished .by the legislation is a proper subject of inquiry.

Same.
  4.  If all parts of a statute have a natural connection and can
reasonably be said to relate, directly or indirectly, to one general and
legitimate subject of legislation, the Act is not open to the charge
that it violates the constitutional provision of section 23, Article V,
of the Constitution, that no bill shall be passed containing more than
one subject.

Same—County Free High Schools—Title—More Than One Subject—Con-
stitution.
  5.  *Held,* under the rule set forth in the foregoing paragraph, that
the Act of 1907, page 50 (Chapter 29), does not contain more than
one subject, to-wit, provision for the establishment and maintenance
of county free high schools, and for validating all acts done under
enactments of the legislature passed on the subject at prior sessions.

Same—Bills for Raising Revenue—Free County High Schools—Constitu-
tion.
  6.  The constitutional provision that all bills for raising revenue
shall originate in the house of representatives (Const., Art. V, sec.

32) is confined in its meaning to bills to levy taxes, strictly speaking, and does not extend to bills for other purposes, but which may incidentally create revenue; hence, the Act of 1907, page 50 (Chapter 29), which originated in the senate, and which, in sections 8 and 9, makes provision for a tax to supply funds for the current expenses of the county free high schools, and for bond issues which may be necessary to raise money to build or purchase school property, does not run counter to the Constitution in this respect.

Same—County Free High Schools—Delegation of Legislative Power.

7. *Held,* that the Act of 1907, Chapter 29, page 50, authorizing the establishment of county free high schools, being a local option law, of uniform operation, the taking effect of which in any particular county is made dependent upon a favorable vote of the electors of such county, is not an unwarranted delegation of legislative power to such electors.

Constitution—Power of Legislature.

8. The state Constitution being a limitation upon, and not a grant of, legislative power, such power is supreme, in the absence of a specific prohibition in that instrument or the use of words which imply a prohibition.

Same—County Free High Schools—Power of Legislature.

9. Section 1, Article XI, of the Constitution commands the legislature to make provision for a general, uniform and thorough system of public free common schools. Section 11 of the same Article provides for the supervision and control of the state educational institutions. *Held,* that these provisions are not exclusive so as to limit the legislative power to the establishment and maintenance of common schools and state institutions only, but that other schools, such as county free high schools, may be established under these sections.

Same—County Free High Schools—Location—Legislative Power.

10. The fact that by section 3 of the Act establishing county free high schools (Laws 1907, Chapter 29, p. 50) the electors who favor the establishment of such schools are designated as the persons who shall determine the location of it, is not a valid objection to its constitutionality as depriving those opposed to such school of the right to vote on the question of its location, contrary to section 2, Article IX, of the Constitution, providing that every male person possessing the necessary qualifications shall have the right to vote upon all questions which may be submitted to the vote of the people.

County Free High Schools—Act Establishing—Failure of Governor to Approve—Effect.

11. The Act above provides that it "shall take effect and be in full force from and after its passage and approval by the governor." It was never expressly approved by the governor, but became a law pursuant to section 12, Article VII, of the Constitution. *Held,* that the provision of this section, that if any bill be not returned by the governor within five days after presentment to him, it shall be a law, in like manner as if he had signed it, is binding upon the legislature, and that the Act became a law notwithstanding the provision in the Act above referred to.

Statutes—Construction—Legislative Policy.

12. In the construction of statutes, courts are not at liberty to question the legislative wisdom or policy.

County Free High Schools—Elections—Proclamation—Notice.

13. Section 3 of the Act of 1907, making provision for the establishment of county free high schools (Laws 1907, Chapter 29, p. 50),

declares that the special election therein mentioned "shall be conducted in accordance with the general election laws of the state." It provides for a notice of election, but makes no mention of an election proclamation. *Held,* that the general election laws are applicable to such special election, except in so far as superseded by the special provisions of the Act, and that the notice of election does not take the place of the election proclamation, made necessary by the reference to the general election laws.

Elections—Statutory Requirements—Duty of Officers.
14. Officers charged by statute with giving a certain notice relative to a special election must at least substantially comply with such requirement,—even assuming it be directory only,—and cannot wholly disregard it or substitute something entirely different in lieu thereof.

County Free High Schools—Elections—Proclamation—Notice—Taxes—Invalidity.
15. Where the defendant county treasurer, in an action to enjoin the collection of a tax imposed for the purpose of establishing a county free high school pursuant to Act of 1907 (Laws 1907, Chapter 29, p. 50), interposed a demurrer, and thus admitted an allegation in the complaint that because of the failure of the board of county commissioners to proclaim the holding of a special election provided for in the Act, and of the clerk to give proper notice, a large number of qualified electors were prevented from voting, the voters had not been given that opportunity to freely and fairly give expression to their wishes, as contemplated by the election laws, and therefore the election was void, and the tax, levied in pursuance thereof, void.

*Appeal from District Court, Chouteau County; Jno. W. Tattan, Judge.*

ACTION by C. H. Evers against L. O. Hudson, county treasurer of Chouteau county. From a judgment of dismissal, entered on sustaining a general demurrer to the complaint, plaintiff appeals. Reversed and remanded.

*Mr. F. E. Stranahan,* and *Messrs. Walsh & Newman,* for Appellant.

In the case of special elections, where the statute requires notice to be given, the special election will be declared void, in the absence of such notice. (*People* v. *Laenna,* 67 Ill. 67; *People* v. *Santa Anna,* 67 Ill. 57; *Bowen* v. *Town of Greensboro,* 79 Ga. 709, 4 S. E. 159; *Hemerick* v. *City of Athens,* 89 Ga. 674, 16 S. E. 72; *Crooke* v. *Daviess Co. Commrs.,* 36 Ind. 320; *Detroit E. R. & I. Co.* v. *Bearss,* 39 Ind. 598; *Commonwealth* v. *Barrett,* 13 Ky. Law Rep. 451, 17 S. W. 336; *People* v.

*Caruthers School Dist.*, 102 Cal. 184, 36 Pac. 396; *George* v. *Oxford Tp.*, 16 Kan. 72; *Jones* v. *State*, 1 Kan. 273; *Jacksonville N. & S. R. Co.* v. *Virden*, 104 Ill. 339; *Barry* v. *Lauck*, 45 Tenn. 588; *Foster* v. *Scarff*, 15 Ohio St. 532; *Secord* v. *Foutch*, 44 Mich. 89, 6 N. W. 110; *Cook* v. *Mock*, 40 Kan. 472, 20 Pac. 259; *People* v. *Thompson*, 67 Cal. 627, 9 Pac. 833; *People* v. *Rosborough*, 14 Cal. 181; *People* v. *Weller*, 11 Cal. 49, 70 Am. Dec. 754; *People* v. *Porter*, 6 Cal. 27.)

Whether or not the publication of the election notice was duly made is a question of law for the court. (15 Cyc. 324, citing *Williams* v. *Roberts*, 88 Ill. 11; *Maze* v. *Slemmons*, 14 Ky. Law Rep. 660.)

The Act in question here is unconstitutional, because it prescribes qualifications for voting not prescribed in the constitution, and denies the voter equal rights and equal protection of the laws. (*Attorney General* v. *Detroit Common Council*, 58 Mich. 213, 5 Am. Rep. 675, 24 N. W. 887; *Coffin* v. *Board of Election Commrs.*, 97 Mich. 188, 56 N. W. 557; *State* v. *Blake*, 57 N. J. L. 6, 29 Atl. 417; *State* v. *Tuttle*, 53 Wis. 45, 9 N. W. 791; *State* v. *Findlay*, 20 Nev. 198, 19 Am. St. Rep. 346, 19 Pac. 241; *State* v. *Fitzgerald*, 37 Minn. 26, 32 N. W. 788; *Spier* v. *Baker*, 120 Cal. 370, 52 Pac. 659; *State* v. *Dillon*, 32 Fla. 545, 14 South. 383; *Morris* v. *Powell*, 125 Ind. 281, 25 N. E. 221; *Gougar* v. *Timberlake*, 148 Ind. 38, 62 Am. St. Rep. 487, 46 N. E. 339.)

It is an elementary rule that the power to legislate cannot be delegated. It has been held that the legislature may not delegate to localities the power to decide whether they shall assume control of their school, or what amount they should expend in school supplies. (*Werner* v. *Galveston*, 72 Tex. 22, 7 S. W. 726, 12 S. W. 159; *Greencastle Tp.* v. *Black*, 5 Ind. 557.) In passing the High School Act the legislative assembly either legislated upon the subject itself and established high schools, leaving their acceptance to be voted upon, or it delegated to the counties the right to legislate thereon and establish high schools for themselves. If it did the former, their act was unconstitutional, because the constitution provides: "Educational  *  *  *

institutions  *  *  *  shall be established and supported by the state in such a manner as may be prescribed by law." (Const., Art. X, sec. 1.)   If it did the latter, their act is unconstitutional, because of their attempted delegation of power to legislate.

In the passage of an Act to take effect upon a contingency, "the statute must be a complete and absolute expression of the legislative will—a law *in praesenti*, to take effect *in futuro*." (26 Am. & Eng. Ency. of Law, 2d ed., p. 567.)   If the High School Act was a law *in praesenti*, it was the establishment of educational institutions in counties, to be supported by counties only, while the constitution (Art. X, sec. 1, *supra*) provides that all such institutions so established shall be supported by the state.

The subject of the Act is not clearly expressed in its title. (*State* v. *Brown*, 29 Mont. 179, 74 Pac. 366.   See *State* v. *Mitchell*, 17 Mont. 67, 52 Pac. 100; *Yagen* v. *Commissioners*, 34 Mont. 79, 85 Pac. 740.)

The Act is unconstitutional, because it contains more than one subject.   The bill relates to establishing and maintaining county free high schools.   That is the primary and principal object and subject of the Act.   Anything contained in the Act not germane to the subject vitiates the Act.   (*Spaulding* v. *Independent Co.*, 42 Or. 394, 71 Pac. 132; *Trumbull* v. *Trumbull*, 37 Neb. 340, 55 N. W. 869; *Railroad Co.* v. *Saunders Co.*, 9 Neb. 407, 4 N. W. 240.)

*Mr. Albert J. Galen*, Attorney General, *Mr. W. H. Poorman*, and *Mr. E. M. Hall*, Assistant Attorneys General, for Respondent.

The notice of the special election here involved, while not a literal, was a substantial, compliance with the law, and therefore sufficient.   (*Seymour* v. *Tacoma*, 6 Wash. 427, 33 Pac. 1059; *Welsh* v. *Wetzel County Court*, 29 W. Va. 631, 1 S. E. 337; McCrary on Elections, sec. 178.)

A liberal construction is given to the Constitutional provision requiring an Act to embrace but one subject.   (*Jobb* v. *County of Meagher*, 20 Mont. 424, 51 Pac. 1034; *Bobel* v. *People*, 173

Ill. 19, 64 Am. St. Rep. 64, 50 N. E. 322.)   All doubts are resolved
in favor of the constitutionality of the law.   (*Hotchkiss* v. *Marion*,
12 Mont. 218, 29 Pac. 821; *Jobb* v. *Meagher County*, 20 Mont. 434,
51 Pac. 1034; *State* v. *McKinney*, 29 Mont. 375, 74 Pac. 1095,)
A plural title will not invalidate a law unless the law is itself
plural. (*Northern Counties Investment Trust* v. *Sears*, 30 Or.
388, 41 Pac. 931; *Lacey* v. *Palmer*, 93 Va. 159, 57 Am. St. Rep.
795, 24 S. E. 930, 31 L. R. A. 822, 26 Am. & Eng. Ency. of
Law, 575, note 4.)   "The legislature has a right to choose the
title of an Act passed by it, and such title may be as broad and
comprehensive as the legislature may choose to make it, or it
may be as narrow and restricted as that body may choose to
make it.   It may be broad enough to include innumerable minor
subjects if they can be so combined and united as to permit of
only one grand and comprehensive subject; or it may be so
narrow and restricted as to include only the smallest and min-
utest subject."   (*Bobel* v. *People*, 173 Ill. 19, 64 Am. St. Rep.
64, 50 N. E. 322; *In re White*, 33 Neb. 812, 51 N. W. 287; *State*
v. *Barrett*, 27 Kan. 213.)   If the subjects embraced in the stat-
ute or the title thereof have congruity, or are connected with
the subject, or are cognate or germane, the statute or title is
not plural. (*Jobb* v. *Meagher County*, 20 Mont. 424, 51 Pac.
1034; *Lacey* v. *Palmer*, 93 Va. 159, 57 Am. St. Rep. 795, 24
S. E. 930, 31 L. R. A. 822; *Ewing* v. *Hoblitzelle*, 85 Mo. 64.)

MR. JUSTICE HOLLOWAY delivered the opinion of the
court.

A petition, signed by the requisite number of freeholders of
Chouteau county, was presented to the board of county com-
missioners of that county, requesting that an election be called
to determine the question of the establishment of a free county
high school in that county.   The required notice was given by
the county clerk of the filing of such petition, and thereafter
the city of Havre was duly nominated as a .candidate for the
location of such school.   The board of county commissioners
ordered a special election to be held, and directed the county

clerk to give the notice of election. The clerk caused to be published *a* notice of such special election, which failed to make any mention of the name of Havre, or of any other city or town, as a candidate for the location of such school, and failed to mention the fact that the matter of the location of such school would be voted upon. At the election on July 6, 1907, 1,125 votes were cast; 545 were cast against the establishment of a high school; 577 in favor of that proposition, and in favor of Havre as the location of such school; 1 vote was cast in favor of Benton; and 2 in favor of Zortman. The board of commissioners met, canvassed the returns, declared that the proposition for the establishment of the school had carried and that Havre had been chosen as the location of such school. A board of high school trustees was thereupon appointed, which board met, made an estimate of the funds necessary for the maintenance of such school for the ensuing school year, which estimate was duly certified to the county clerk, and the board of county commissioners made a levy of one mill on the dollar of the assessed valuation of taxable property within Chouteau county for the purpose of raising such necessary funds. This tax was extended on the tax-rolls, and in due course of time such tax-rolls were delivered to the respondent, the county treasurer, for the purpose of collecting the taxes. Thereupon this action was commenced by the plaintiff, a taxpayer of Chouteau county, to enjoin the county treasurer from collecting this one-mill levy for high school purposes. The complaint sets forth fully all the acts and things done in connection with the special election.

To this complaint the defendant interposed a general demurrer, which was sustained, and, the plaintiff electing to stand upon his complaint, a judgment was rendered and entered dismissing the action, from which judgment this appeal is prosecuted.

In appellant's brief two contentions are made, and these raise numerous questions for determination: First, it is contended that the statute under which it was attempted to proceed is uncon-

stitutional; second, it is said that, if the statute is constitutional, its provisions were not followed, and the tax levied is void.

1. The statute under consideration is Chapter 29 of the Acts of the Tenth Legislative Assembly (Sess. Laws, 1907, p. 50).

(a) It is contended that the title of the Act is fatally defective. The title, as given in the enrolled bill, is as follows: "An Act to establish County Free High Schools and provide for their maintenance, 'approved March 3, 1899, and repealing 'An Act to amend sections, 2, 3, 4, 6, 8, 11, 12, 13, 14, 16, 17, and 19, and to repeal Sections 21 and 22 of Substitute for House Bill No. 69: 'An Act to establish County Free High Schools and to provide for their Maintenance, approved March 3, 1899, and to renumber certain sections of said Act,' approved March 14, 1901; also repealing Chapter LXIX of the Laws of 1903, entitled: 'An Act to amend sections 2 and 3 of Senate Bill No. 37, as enacted by the Seventh Legislative Assembly of the State of Montana, relating to the election of trustees of the County Free High Schools,' approved March 5, 1903, and to validate everything done under any of said Acts of March 3, 1899, March 14, 1901, and March 5, 1903."

Section 23, Article V, of the Constitution, provides that the subject of every bill, except certain designated ones, shall be clearly expressed in its title. In *State* v. *McKinney*, 29 Mont. 375, 74 Pac. 1095, this court, in considering this particular provision of the Constitution, laid down five rules for determining whether any particular Act is invalid by reason of a defective title. A reference to that case is sufficient, and those rules need not be reproduced here. In addition we may add: (6) This provision of the Constitution relates to matters of substance, and not merely to matters of form. (7) "If a title fairly indicates the general subject of the Act, is comprehensive enough in its scope reasonably to cover all the provisions thereof, and is not calculated to mislead either the legislature or the public, this is a sufficient compliance with the constitutional requirement." (26 Am. & Eng. Ency. of Law, 2d ed., 579.) (8) "Generality or comprehensiveness in the title is no objection,

provided the title is not misleading or deceptive and fairly directs the mind to the subject of the law in a way calculated to attract the attention truly to the matter which is proposed to be legislated upon.'' (26 Am. & Eng. Ency. of Law, 2d ed., 581.) And (9) ''meaningless words and phrases may be discarded by construction, and if, after such elimination, the title clearly expresses the subject of the Act, it is sufficient.'' (26 Am. & Eng. Ency. of Law, 2d ed., 584.)

These principles in general terms had already been announced in this state. (*State* v. *Mitchell*, 17 Mont. 67, 42 Pac. 100.) In *State* v. *Anaconda C. M. Co.*, 23 Mont. 498, 59 Pac. 854, this court, in considering this same constitutional provision, said: ''But by this constitutional notice it is only intended that the subject of the bill shall be fairly expressed in the title. It is not necessary—for the Constitution has not so declared—that a title shall embody the exact limitations or qualifications contained in the bill itself which are germane to the purpose of the legislature, if the general subject of the measure is clearly expressed in the title. Upon the highest authority it is held that, under constitutional provisions substantially like that referred to in Montana, where the degree of particularity necessary to be expressed in the title of a bill is not indicated by the Constitution itself, the courts ought not to 'embarrass legislation by technical interpretations based upon mere form of phraseology. The objections should be grave, and the conflict between the statute and the Constitution palpable, before the judiciary should disregard a legislative enactment upon the sole ground that it embraced more than one object, or, if but one object, that it was not sufficiently expressed by the title.' '' This was approved in *Yegen* v. *Board of Commissioners*, 34 Mont. 79, 85 Pac. 740.

The supreme court of Indiana has announced the same doctrine in the following language: ''The title will sufficiently conform to the command of the Constitution if it be so framed and worded as to fairly apprise the legislators and the public in general of the subject matter of the legislation, so as to rea-

sonably lead to an inquiry into the body of the bill. The constitutional requirement may be interpreted to mean that the Act and its title must correspond, not literally, but substantially, and such correspondence is to be determined in view of the subject matter to which the legislation relates.'' (*Maule Coal Co.* v. *Partenheimer*, 155 Ind. 100, 55 N. E. 751.)

In considering a like constitutional provision the supreme court of Minnesota, in *State ex rel. Olsen* v. *Board of Control*, 85 Minn. 165, 88 N. W. 533, said: ''Throughout all the decisions it will be found that it is a regard for the law itself, rather than any puerile consideration for the title, which is made the essential object of judicial anxiety. A review of the cases where this court has set aside statutes because in violation of section 27, Article 4, will show that the Act was in every respect (to adopt the language of Justice Flandrau in *Board of Supervisors of Ramsey County* v. *Heenan*, 2 Minn. (Gil. 281, 330), entirely foreign to the object 'expressed in the title,' thus furnishing the evidence of such a fraud in securing its enactment that the law 'would never have received the sanction of the legislature, had the members known the contents of the Act.' '' (See, also, *Commonwealth* v. *Brown*, 91 Va. 762, 21 S. E. 357, 28 L. R. A. 110; *Allen* v. *Hopkins*, 62 Kan. 175, 61 Pac. 750; Sutherland on Statutory Construction, sec. 86.)

Tested by these rules, we think the title of this Act is not subject to the objection urged. Stripped of the meaningless portion, it reads: ''An Act to establish County Free High Schools and provide for their Maintenance, and to validate everything done under any of said Acts of March 3, 1899, March 14, 1901, and March 5, 1903.'' This title is clear and comprehensive. It indicates the object to be accomplished, and it would appear impossible that anyone could have been misled by reason of the insertion of the meaningless portion, just eliminated. The enactment of this statute would have the effect of repealing existing statutes in conflict with it, whether such intended repeal was indicated by the title or not.

(b) The same section of the Constitution referred to above, with the exceptions noted, provides that no bill shall be passed containing more than one subject; and it is contended that the Act under consideration offends against this provision, in that it attempts to provide for the establishment and maintenance of county free high schools, and for validating everything done under certain prior Acts of the legislature. In determining the question thus raised, the object sought to be accomplished by the legislature is always a proper subject of inquiry. It is a part of the history of this state that the first measure, having in view the establishment of a uniform system of county free high schools, was passed and approved March 3, 1899 (Sess. Laws, 1899, p. 59). Certain amendments were made by the legislature in 1901 (Sess. Laws, 1901, p. 6), and again in 1903 (Sess. Laws, 1903, p. 139) ; and the legislature will be presumed to have taken cognizance of the fact that steps had been taken in several counties of the state to carry these several Acts into effect.

It is perfectly apparent that the object of the legislature in 1907 was to perfect the legislation upon the subject, and for that purpose an entirely new and more comprehensive Act was proposed. It was likewise the purpose to entirely supplant all previous legislation upon the subject, but at the same time· to validate the acts of the several counties under prior laws. In other words, its purpose was to provide for the organization and maintenance of a uniform system of county free high schools.

The object of the constitutional provision now under consideration is not to embarrass honest legislation, but to prevent the vicious practice, which prevailed in states which did not have such inhibitions, of joining in one Act incongruous and unrelated matters. · The rule of interpretation now quite generally adopted is that, if all parts of the statutes have a natural connection and can reasonably be said to relate, directly or indirectly, to one general and legitimate subject of legislation, the Act is not open to the charge that it violates this constitutional

provision; and this is true no matter how extensively or minutely it deals with the details looking to the accomplishment of the main legislative purpose. (26 Am. & Eng. Ency. of Law, 2d ed., 575.) Or, stating the converse of the proposition, it may be said that if, after giving the Act the benefit of all reasonable doubts, it is apparent that two or more independent and incongruous subjects are embraced in its provisions, the Act will be held to transgress the constitutional provision, and to be void by reason thereof. (26 Am. & Eng. Ency. of Law, 2d ed., 578; *Jobb* v. *Meagher County*, 20 Mont. 424, 51 Pac. 1034; *Northern Counties Investment Trust* v. *Sears*, 30 Or. 388, 41 Pac. 931, 35 L. R. A. 188; *Allen* v. *Hopkins*, above; *Maule Coal Co.* v. *Partenheimer*, above; Cooley's Constitutional Limitations, 7th ed., p. 205.)

Viewed in the light of these rules, we think the Act now under consideration treats of one general subject only, the establishment and maintenance of a system of county free high schools, and is not open to the objection urged in this portion of appellant's brief.

(c) It is further urged against the validity of this Act that its purpose is to raise revenue and, since the bill for the Act originated in the state senate, the Act is invalid as in contravention of section 32, Article V, of the Constitution, which provides: "All bills for raising revenue shall originate in the house of representatives; but the senate may propose amendments, as in the case of other bills."

The bill for this Act originated in the senate, and was designated "Senate Bill No. 28." Was it a "bill for raising revenue," within the meaning of that phrase as used in section 32 of Article V, above? The federal Constitution, and, so far as we know, the Constitution of every state contains a like provision, and the subject under discussion has received generous attention from courts of last resort.

In *State* v. *Bernheim*, 19 Mont. 512, 49 Pac. 441, this court held that the provision of the Constitution now under consideration must be confined in its meaning to bills to levy taxes

in the strict sense of the words, and has not been understood to extend to bills for other purposes which may incidentally create revenue. And this is the interpretation now generally adopted. (*Curryer* v. *Merrill*, 25 Minn. 1, 33 Am. Rep. 450; *Commonwealth* v. *Bailey*, 81 Ky. 395; *Northern Counties Investment Trust* v. *Sears*, above; *The Nashville*, 4 Biss. 188, Fed. Cas. No. 10,023; *United States* v. *Norton*, 91 U. S. 566, 23 L. Ed. 454; *Twin City Bank* v. *Nebeker*, 167 U. S. 196, 17 Sup. Ct. 766, 42 L. Ed. 134; 1 Story on the Constitution, sec. 880.)

The only provisions of this Act relating to taxation or revenue provide for a tax to supply funds for the current expenses of such schools (Section 8), and for bond issues to raise money to build or purchase school property (Section 9). In any event, the tax is only upon the property of the county, and the funds to be raised belong exclusively to the particular school for which they are raised. No part of the funds can by any possible means find its way into the state treasury, and the provisions of this section of the Constitution clearly refer to revenues *of the state*. This seems to have been the view entertained by this court in *State* v. *Bernheim*, for, after announcing the doctrine above, it is said: "Tested by these rules, we are clearly of the belief that there is nothing in the context of the bill to justify the opinion that the motive of the legislature in passing it was to raise revenue for the state."

In *Rankin* v. *City of Henderson*, 9 Ky. Law Rep. 861, 7 S. W. 174, the court said: "Nor is the Act unconstitutional because the bill, conferring the power, had its origin in the senate. The object of the bill, it is true, was to raise revenue for the local government; but the provision of the Constitution requiring 'bills for raising revenues' to originate in the house cannot be applied to a license tax, or to any tax imposed merely for the maintenance of a municipal corporation. The provision of the Constitution in question applies to the state, or the revenue that goes into or properly belongs to the state treasury." To the same effect is *Fletcher* v. *Oliver*, 25 Ark. 289; *Opinion of Justices*, 126 Mass. 601.

This Act does not assume to levy a tax, but at most only authorizes the county commissioners to make a levy. In *Harper* v. *Commissioners,* 23 Ga. 566, it is said: "Besides, the delegation of the power to tax and the laying of a tax are two things. This Act does the first; the last, it does not do. The constitutional provision applies to an Act which does the last, and does not apply to an Act which does the first."

For these reasons we hold that the provisions of section 32, above, have no application, and it is entirely immaterial whether the bill for the Act originated in the senate or house of representatives.

(d) Again it is urged that the Act is void because it delegates to the voters of the county power to legislate, or to establish high schools at the county's expense, contrary to the provisions of the Constitution.

The Act is a local option law, of uniform operation; but its taking effect in any particular county is made dependent upon a favorable vote of the electors of that county. That an Act of this character is not open to the objection that it is an unwarranted delegation of legislative power has been determined by this court. In *In re O'Brien,* 29 Mont. 530, 75 Pac. 196, it is said: "The most frequent objection made is that such laws are an unwarranted delegation of legislative power to the people. Under our system of government the law-making authority is vested in the legislative assembly, and can be exercised by no one else. The legal effect of the popular vote, however, is not infrequently misconceived. If the law is complete in all its parts, it is an expression of the legislative will none the less that the contingency upon which it takes effect in any particular locality is made to depend upon a favorable vote of the people of that locality. * * * While the legislature may not delegate to the people the authority to make the law, or to say what kind of a restrictive measure shall be adopted, or propose a law and submit it to a vote of the people to say whether or not it shall in fact be enacted into law, it may pass as an Act which takes effect only upon the happening of a contin-

gency—a favorable vote of the people.'' (See, also, *People ex rel. Boardman* v. *City of Butte,* 4 Mont. 174, 47 Am. Rep. 346, 1 Pac. 414; 15 Cyc. 319.)

But it is further said that the legislature was without the power or authority to provide for the establishment of high schools to be supported by the several counties. Section 1, Article XI, of the Constitution, commands the legislature to make provision for a general, uniform and thorough system of public free common schools; and by section 11 of the same Article provision is made for the supervision and control of the university and other state educational institutions. It is now said that these provisions are exclusive, and limit the legislative authority to establishing and maintaining common schools and state institutions. But, when we consider that our Constitution is a limitation upon, and not a grant of, legislative power, in the absence of some specific prohibition in the Constitution, or the use in that instrument of terms which imply a prohibition, the legislative power must be held to be supreme.

In *State ex rel. Sam Toi* v. *French,* 17 Mont. 54, 41 Pac. 1078, 30 L. R. A. 415, this court said: ''Constitutions of a state are distinguished from the Constitution of the United States in this: 'The government of the United States is one of enumerated powers; the national Constitution being the instrument which specifies them, and in which authority should be found for the exercise of any power which the national government assumes to possess. In this respect it differs from the Constitutions of the different states, which are not grants of powers to the states, but which apportion and impose restrictions upon the powers which the states inherently possess.' (Cooley's Constitutional Limitations, 10.) Therefore, a state legislature is not acting under enumerated or granted powers, but rather under inherent powers, restricted only by the provisions of their sovereign Constitution.'' (See, also, *State* v. *Camp Sing,* 18 Mont. 128, 56 Am. St. Rep. 551, 44 Pac. 516, 32 L. R. A. 635.)

In 8 Cyc. 776, the general rule of construction is announced as follows: ''And by the weight of authority statutes passed

by the state legislatures, and free from objections on constitutional grounds, must be enforced; for the power of a state to enact laws within its constitutional limits is supreme. The only test of the validity of an Act regularly passed by a state legislature is whether or not it violates the state or federal Constitutions in express terms or by clear implication. Courts are never at liberty to question the wisdom or policy of an Act of the legislature; their duty being to enforce such Acts as are passed to the extent to which they are found to be constitutional, and no further."

The evident purpose of section 1, Article XI, above, was to insure a system of common schools; but there is not anything in that section, or elsewhere in the Constitution, which directly limits, or by implication may be said to limit, the power of the legislature to provide for other schools. As to whether there is any limitation, beyond which the law-making power may not go in matters of this character, need not now be considered. It was said in *Koester* v. *Board of County Commissioners*, 44 Kan. 141, 24 Pac. 65: "The concern of the Constitution makers does not seem to have been to provide against the danger of too many schools, but to secure a common school system principally, and also other schools of a higher grade."

Section 1, Article XI, is not a limitation upon the legislative power, but is a solemn mandate to the legislature. That the chief concern of the framers of the Constitution was directed to free common schools is evidenced by the facts that such schools are made sole beneficiaries of the public school funds. But the declared concern of the Constitution framers for a system of public free common schools does not in any sense militate against the power of the legislature to establish other schools. "The matter of education is one of public interest, which concerns all the people of the state, and is therefore subject to the control of the legislature." (*State ex rel. McCausland* v. *Board of Commissioners*, 61 Kan. 90, 58 Pac. 959, 47 L. R. A. 67; see, also, *People ex rel. Pixley* v. *Lodi High School District*, 124 Cal. 694, 57 Pac. 660.)

(e) It is said again that the Act is invalid, for the reason that it denies to the voters who were opposed to the establishment of a high school the right to vote upon the question of the location of such school, and section 2, Article IX, of the Constitution, is cited in support of this contention. That section provides that every male person, of the age of twenty-one years or over, possessing certain qualifications, shall have the right to vote "upon all questions which may be submitted to the vote of the people."

The Act of 1907 prescribes the form of the ballot and the method of voting as follows:

"The ballot shall be substantially in the following form:

"For a County High School at
                "Helena,
                "Marysville,
        "Against a County High School.

"An elector desiring to vote for the establishment of a high school shall do so by placing an X before the name of the town at which he desires the high school to be located, which shall also be a vote in favor of such town. An elector desiring to vote against the establishment of a high school shall do so by placing an X before the clause 'Against a County High School,' and shall not vote for any town." (Section 3.)

It is apparent that in the contemplation of the legislature only one question was to be submitted; for the Act in section 3 provides that the clerk shall give notice "*that the question* of the establishment of a county free high school in said county and the location thereof will be submitted to the qualified electors," etc. The legislature apparently entertained the idea that the location of the school was a mere incident.

But it is contended upon the part of the appellant, that every elector ought to have the right to vote for or against the proposition to establish the school, and, in addition, ought to have the right to vote for the location of the school at one particular place, as against any other place; and it is said that any other

construction of the Act might lead to complications in the event of a tie vote for the location of the school. But this possible contingency need not weigh with us in determining the validity of this Act; for, if the question of the location of the school is one which can only be determined by submitting it to a vote of the qualified electors of the county, then this Act is invalid.

But, as we have said above in paragraph "d," the establishment and maintenance of a system of county free high schools is a proper exercise of the legislative power, and the method to be pursued in establishing such schools, or in securing locations for them, is one of legislative discretion. In other words, the legislature might have provided for the establishment of such a school in every county in the state, without submitting the question to the electors at all, and might, with equal authority, have made provision for submitting the question of the particular location to the board of county commissioners, or the board of trustees of such school, or to any other select body of citizens; for the mere act of selecting a site is not a legislative act at all.

In *People* v. *Dunn,* 80 Cal. 211, 13 Am. St. Rep. 118, 22 Pac. 140, the court was considering an Act of the legislature making an appropriation for the purchase of a site and the erection of suitable buildings for the California Home for the Care and Training of Feeble-Minded Children, which Act provided that the site should be selected by a committee consisting of the board of trustees of the home and two other citizens, to be appointed by the governor. An objection was urged against the validity of the Act that "it delegates legislative powers and functions to a board of trustees aided by two citizens; the two bodies forming a commission clothed with legislative powers and functions." But the court dismissed the contention by saying: "Nor do we think there is any force in the objection that, by providing that certain persons should select the site for the building proposed to be constructed, the Act attempted to delegate legislative functions and powers. To hold that such a power could not be vested

in persons named in the Act would be an unreasonably strict application of the rule that legislative functions cannot be delegated. The mere act of selecting a site to be purchased was not a legislative act.''

We think this is correct and conclusive upon this branch of the case; for, if the legislature could designate the board of county commissioners to select the site, no objection can be urged against the designation of those voters who favor the establishment of the school as the particular persons who shall determine the location of the school.

(f) Section 23 of this Act provides: ''This Act shall take effect and be in full force from and after its passage and approval by the governor.'' The Act was never expressly approved by the governor, but became a law pursuant to the provisions of section 12, Article VII of the Constitution, which section, so far as applicable, reads as follows: ''If any bill shall not be returned by the governor within five days (Sundays excepted) after it shall have been presented to him, the same shall be a law, in like manner as if he had signed it.'' This provision of the Constitution is binding upon the legislature, and this Act became a law in like manner as if it had been signed by the governor, any provision in the bill notwithstanding.

We think the Act is not open to any of the objections urged against it.

2. But it is contended that, even if the Act is valid, its provisions were not followed, and the election was therefore invalid, and the tax levy, made in consequence of the election, void.

Section 3 of the Act provides that the election at which the question of the establishment of a high school is to be determined ''shall be conducted in accordance with the general election laws of the state.'' And again, in the same section it is provided that ''the notice [of election] shall distinctly specify the places which are candidates in the forthcoming election.'' It is contended that each of these provisions of the Act was flagrantly violated. It is conceded, first, that an election proclamation was not issued by the board of county commissioners of Chouteau county

prior to the election of July 6, 1907; and, second, that the notice of election did not contain the name of any place which was a candidate for the location of such school, and did not mention in any manner the fact that the location of the school would be voted upon. But it is said by the attorney general: "The election in question was a special election authorized and governed by a special law, and the general election laws of the state can have no application so far as the proceedings are directed by said special law."

It is true that the Act of 1907 provides for the particular notice of election which must be given, its contents, and the time and manner of its promulgation; also the form of the ballot to be used, and the mode by which the electors shall express their views upon the question submitted. But these are the only provisions found in the Act, and the declaration of section 3, that "said election shall be conducted in accordance with the general election laws of the state," must be held to mean that the provisions of the general election laws are applicable to such an election, except only in so far as they are superseded by the special provisions of this Act.

We think it can hardly be said that the notice of election takes the place of the election proclamation. The notice of election need only be published in the official paper in the county; while the proclamation must not only be published, but must be posted at every voting place for at least five days before such election. (Pol. Code, sec. 1163.) While the legislature might have provided that the publication of the notice of election would be ample to give all interested sufficient notice of such election, or might have provided for posting such notice of election at every voting place, it did not do so. We are required by generally accepted rules of statutory construction to give some meaning to the provision of section 3 last above quoted. That provision seems plain to us, and must be held to be applicable and binding upon the board of county commissioners in this instance.

The evident purpose of requiring an election proclamation to be issued is to give greater publicity to the fact that an election is to be held. Even if we doubted the wisdom of the legislature in making this requirement, that would be a matter of no concern; for in construing statutes the courts are not at liberty to question the legislative wisdom or policy. The provisions of the Act are plain, and work no hardship upon the officers who are required to obey them.

The notice of election is admittedly defective. It fails to give the name of the place which was a candidate for the location of the school, as required by section 3 of the Act, or to mention the fact that the location of such school would be voted upon.

But it is contended that the provisions of section 3 are directory, and that the election ought not to be set aside because of the informality of the notice. It is a general rule of law "that an election is not to be set aside for a mere informality or irregularity which cannot be said in any manner to have affected the result of the election." (1 Dillon on Municipal Corporations, sec. 197, note 3.) And while it is generally conceded that there is a distinction between general elections, the time for which is fixed, and special elections, the time for which must be determined by some board or officer, and that provisions of law respecting the notice of election for a general election will be held directory only, while such provisions respecting a special election will be held to be mandatory, still for the purposes of this argument we may admit, without deciding, that the provisions of section 3 above are directory only; but such an admission does not imply that the officers may wholly disregard such provisions, or substitute something altogether different in lieu of their requirements. It only means that a substantial, as distinguished from a strictly technical, compliance with those provisions will be insisted upon. In this instance we do not think that the notice given even substantially complies with the requirements of the Act; and when we remember that it is admitted that "because of the failure of said board of county commissioners to proclaim the said pretended special election or

to publish or post any proclamation thereof, and because of the failure of the said clerk of said county to give proper notice of said election, or of the candidate for the location of said county free high school, or of the fact that the question of the location of said high school would be submitted at said election, no election was held, nor were any polls therefor opened, nor any votes thereon cast, at one-third of the voting precincts of said county of Chouteau hereinabove named, and by reason thereof a large number of the qualified electors of said county, to wit, about one thousand qualified electors thereof, were prevented from attending or voting at said pretended election,'' we think it would be asking altogether too much to hold that the qualified electors of Chouteau county were given that opportunity freely and fairly to express themselves which our election laws contemplate.

For the failure of the board to make the required proclamation and to give it due publicity, as required by law, and for the failure of the county clerk to give notice of such special election in substantial conformity with the requirements of the Act of 1907, we hold that the election of July 6, 1907, was void, and that the tax levy for high school purposes is invalid, assuming that the allegations of this complaint are true, as admitted by the demurrer. The judgment of the district court is reversed, and the cause is remanded, with directions to vacate the order heretofore made and overrule the demurrer to the complaint. *Remittitur* forthwith.

*Reversed and remanded.*

Mr. Chief Justice Brantly and Mr. Justice Smith concur.