STATE OF MONTANA, RESPONDENT, *v.* BERNHEIM, APPELLANT.

[Submitted April 29, 1897. Decided May 17, 1897.]

*Common Carriers—Sale of Tickets—Statutory Regulations—Constitutionality—Police Regulation.*

Session laws of 1893, page 150 (Civil Code, section 978-984) originated in the senate. The law provides that the owners of railroads or steamboats for the transportation of passengers shall provide each agent, who is authorized to sell ticke.s, with a certificate of his appointment, that "such agent ——— shall exhibit the same to the secretary of state, ——— and at the same time shall pay to the said secretary of state a

license fee of one dollar" whereupon the secretary shall issue a license. *Held*, that the law is in the nature of a police regulation and is not for revenue purposes; and that therefore the fact that the bill originated in the Senate is not in violatio 1 o article 5, section 32, of the Constitution, which provides that all bills for raising revenue shall originate in the House of Representatives.

TITLE OF BILLS.— A title of a bill was as follows: "An act to regulate the sale and redemption of transportation tickets of common carriers." The act provides for a certificate of the appointment of agents to sell such tickets, and the issuance of a license, and that such certificate and license shall be posted for the information of travellers. The law also makes it unlawful for any person who is not in possession of such certificate and license, to sell tickets, and provides a penalty for violating that portion of the Act. *Held*, that the subject of the Act is clearly expressed in the title; and that the penalty imposed is merely an incident to the regulation of the sale and redemption of transportation tickets, which is the subject of the law.

*Appeal from district court, Lewis and Clarke County.   H. R. Buck, Judge.*

J. BERNHEIM was convicted of the unlawful sale of a railroad ticket, and appeals.    Affirmed.

Statement of the case by the justice delivering the opinion.

The defendant was informed against for having sold a railroad ticket in violation of the law.    He was tried and convicted, and appeals from the judgment of conviction.

The law under which the defendant was convicted is entitled "An act to regulate the sale and redemption of transportation tickets of common carriers."    Sess. Laws 1893, p. 150; also, sections 978 to 984, inclusive, of the Civil Code of Montana. Section 1 of the original law provided that the owner of any railroad or steamboat shall provide each agent who is authorized to sell tickets with a certificate setting forth the authority of such agent.    If the owner should be a corporation, then such certificate must be under the corporate seal.    It is the duty of the agent to keep the certificate conspicuously posted for the information of travelers.    He must also, within 10 days thereafter, exhibit the same to the secretary of state, and, upon payment of a license fee of one dollar, the secretary of state issues to such agent a license under the seal of the state of Montana, which authorizes the persons so receiving the same to engage in the business of selling tickets of the common carrier from whom he holds his appointment.    This license is also required to be kept conspicuously posted.

Section 2 makes it unlawful for any person who has not thus been appointed to sell tickets.

Section 3 provides a penalty for the violation of the second section of this act.

Section 4 makes it the duty of every agent so authorized to sell tickets to exhibit his authority to any officer of the law who may request him so to do.

Section 5 provides for the redemption of the unused portion of any ticket, and prohibits the sale by any person of such ticket, or of the unused portion of such ticket otherwise than by presentation for redemption under the terms of this act. A violation of the provisions of this act subjects the party offending to a specified penalty.

Section 6 provides a penalty for the unreasonable refusal of a railroad company or other common carrier to redeem its tickets, as required by section 5.

Section 7 makes it unlawful for any ticket-selling agent or common carrier to dispose of tickets at a greater or less price than the regular rate for the same.

*Henry C. Smith* and *Thompson Campbell*, for Appellant.

*C. B. Nolan*, Attorney General, for the state.

HUNT, J.—The appellant assails the validity of the act of the legislature under which the defendant was convicted. He does not, however, ask the court to declare it in violation of article 3 of section 27 of the constitution of the state, and the fifth amendment of the constitution of the United States, which provide that "no person shall be deprived of life, liberty or property without due process of law," but relies entirely upon these two propositions:

First. Because the bill was one for raising revenue for the state of Montana, and, it being conceded that it originated in the senate, he argues that it violates the provisions of article 5 of section 32 of the constitution of the state, which reads as follows: "All bills for raising revenue shall originate in the

House of Representatives, but the Senate may propose amendments as in the case of other bills.''

Secondly. Because the constitutional provision (section 23 of article 5 of the constitution of the state) requiring the subject of every bill to be clearly expressed in its title was violated at least to the extent of rendering the penalty clauses of the law void by the omission to include in the title sufficient references to those clauses of the bill which imposed a punishment for violation of the law.

The argument of counsel that the law under consideration is a revenue law is based upon the fact that a license fee of one dollar must be paid to the secretary of state for the license provided for in section 1 of the act. This fee must be paid by the agent of the railroad company (who is authorized to sell tickets) to the secretary of state, who in turn issues the license to the person authorized to engage in the business of selling tickets of the common carrier, from whom he holds his appointment as agent. It is contended that, because this license may become a source of revenue to the state, the law providing for this revenue is a revenue law, within the meaning of the section of the constitution referred to.

The first clause of section 32 of article 5 of the constitution of Montana, in its requirement that ''all bills for raising revenue shall originate in the House of Representatives,'' is identical with the language of section 7 of article 1 of the constitution of the United States, while the remaining clause, permitting amendments by the senate, is substantially similar to a like clause of the federal constitution. This exclusive right of the House of Representatives to originate bills for raising revenue having been obviously borrowed from the federal constitution, into which, Judge Story says, it found its way originally from similar privileges exercised by the British House of Commons, we naturally turn to the construction of similar words by the federal courts, in order to learn their views of what are properly ''bills for raising revenue.''

In the case of *U. S.* v. *Mayo*, 26 Fed. Cas. 1231, decided in 1813, Judge Story, in discussing liability for penalties under the embargo acts, used this language:

"It is argued that the present is a case arising under the revenue laws of the United States, and that in an enlarged sense these words embrace all laws where any fine or forfeiture accrues to the government. I have no difficulty in rejecting this construction, as it would draw within its grasp every crime to which a pecuniary fine or forfeiture attaches by law, of whatsoever character it might be; and I might add that not a single law inflicting a forfeiture would escape its comprehensive power. The true meaning of 'revenue laws' in this clause is such laws as are made for the direct and avowed purpose for creating and securing revenue or public funds for the service of the government. No laws whose collateral and indirect operation might possibly conduce to the public or fiscal wealth are within the scope of the provision. The argument on this head therefore utterly fails."

Story, years afterwards, in his treatise on the Constitution (section 880), again wrote as follows:

"What bills are properly 'bills for raising revenue,' in the sense of the constitution, has been a matter of some discussion. A learned commentator supposes that every bill which indirectly or consequentially may raise revenue is, within the sense of the constitution, a revenue bill. He therefore thinks that the bills for establishing the postoffice and the mint and regulating the value of foreign coin belong to this class, and ought not to have originated, as in fact they did, in the senate. But the practical construction of the constitution has been against his opinion. And, indeed, the history of the origin of the power already suggested abundantly proves that it has been confined to 'bills to levy taxes' in the strict sense of the words, and has not been understood to extend to bills for other purposes, which may incidentally create revenue. No one supposes that a bill to sell any of the public lands, or to sell public stock, is a bill to raise revenue in the sense of the constitution. Much less would a bill be so deemed which merely regulated the value of foreign or domestic coins, or authorized the discharge of insolvent debtors upon assignments of their estates to the United States, giving a priority

of payment to the United States in case of insolvency, although all of them might incidentally bring revenue into the treasury.''

This construction by Judge Story has been expressly approved by the supreme court in *U S. v. Norton*, 91 U. S. 566. See also, *The Nashville*, 4 Biss. 188, Fed. Cas. No. 10,023.

Tested by these rules, we are clearly of the belief that there is nothing in the context of the bill to justify the opinion that the motive of the legislature in passing it was to raise revenue for the state. The more general object of the law, as expressed by its provisions and title, was to regulate the sale of railroad and steamboat transportation, limiting the right of sale of tickets to those designated as agents by the carriers, to the end, doubtless, of preventing violation of agreements under which transportation companies often sell their tickets to original purchasers, and to prevent fraudulent practices upon the public as well, and to provide for the redemption of certain tickets or coupons by carriers.

We need not dwell upon that feature of appellant's argument that the license charge or fee for the transaction of the business of an agent is a tax, as the word ''tax'' is employed in section 1 of article 12 of the constitution, which provides that ''the legislative assembly may also impose a license tax both upon persons and upon corporations doing business in the state,'' designed to raise money for public purposes.

The statute not being for revenue purposes, we regard it as a police regulation, adopted by the legislature in the exercise of the police power, and certainly not in conflict with the constitutional provision which the appellant says it violates.

As said before in this opinion, the question whether or not the law itself violates the United States and state constitutions by attempting to deprive a man of his ''property'' without due process of law is not presented for our consideration, and we have assumed throughout that, unless the points relied on by appellant are well taken, the law is valid, and must be upheld.

Nor is there merit in the point that the subject of the act is not clearly expressed in the title. The subject of the law is the regulation of the sale and redemption of tickets. As an incident of regulation, penalties are provided against violation of the law. The provisions for these penalties are part of the methods for the regulation—means whereby the regulation may be effectuated.

Experience amply demonstrates that to regulate a particular business by law, and put a statute regulating it into practical and effective operation, there must be punishments prescribed and imposed upon those who violate its commands. But such penalties need not be included in the title, for they are but "ends and means necessary or convenient for the accomplishment of the general object." (Cooley, Const. Lim. p. 172; *Insurance Co.* v. *Raymond*, 70 Mich. 485, 38 N. W. 474; *Canal Co.* v. *Bright*, 8 Colo. 144, 6 Pac. 142; *State* v. *Stunkle*, 41 Kan. 456, 21 Pac. 675; *Howell* v. *State*, 71 Ga. 224. The judgment is affirmed.

*Affirmed.*

PEMBERTON, C. J., concurs. BUCK, J., disqualified.