STATE, RESPONDENT, v. PEPPER, APPELLANT.

(No. 5,491.)

(Submitted May 23, 1924. Decided June 11, 1924.)

[226 Pac. 1108.]

*Motor Vehicle License—Statute—Validity—Police Regulation—
Reasonableness of Fees—Presumptions—Title of Act—Suffi-
ciency—Constitution—Judicial Notice.*

Statutes—Constitutionality Presumed.
    1. On appeal it will be presumed that a statute assailed as uncon-
stitutional is a valid legislative enactment, until appellant has dis-
charged the burden resting upon him of showing its unconstitu-
tionality beyond a reasonable doubt.

Motor Vehicle License—Statute—Validity.
    2. *Held,* that Chapter 75, Laws of 1917, as amended (secs. 1742–
1763, Rev. Codes 1921; Chap. 107, Laws 1923), requiring the registra-
tion of motor vehicles and the payment of prescribed fees, is not
open to the constitutional objection that it is a revenue measure, but
that it may be justified as a reasonable police regulation.

Licenses—What Constitutes a License, What a Tax.
    3. Where a fee is imposed for the purpose of regulation and the
statute requires compliance with certain conditions in addition to the
payment of the prescribed sum, such sum is a license proper imposed
by virtue of the police power; but when it is exacted solely for
revenue purposes without any further condition it is a tax.

Motor Vehicles—Operation a Proper Subject of Police Regulation.
    4. The operation of motor driven vehicles upon the public roads is
a proper subject of police regulation.

Motor Vehicle License—Reasonableness—Of What Judicial Notice may
not be Taken.
    5. In passing upon the contention, unsupported by evidence, that
the license fee exacted by Chapter 75, Laws of 1917, as amended,
is in excess of the reasonable expense of regulation, the supreme court
cannot take judicial notice of the number of vehicles in the state,
the amount payable for each one, the cost of administering the law,
the net amount paid over to the counties or the cost of enforcing the
Act.

Same—Police Regulation—Reasonableness of Fee—Elements Entering into.
    6. The general rule that the license fee required by an Act designed
as a police regulation must not exceed the cost of issuing the license
and the additional cost of inspection and supervision is subject to
the qualification that the licensing authority may add the cost of all
incidental consequences which may reasonably subject the public to
expense as a result of the conduct of the business licensed.

Same—Reasonableness Presumed.
    7. *Held,* upon inspection of Chapter 75 alone and in the absence of
evidence showing otherwise, that the license fee exacted from the

---

Validity of excise or license tax upon automobiles, see notes in **Ann.
Cas.** 1915C, 712; 37 **L. R. A.** (n. s.) 440, 52 **L. R. A.** (n. s.) 949;
**L. R. A.** 1915D, 322.

[70 Mont. 596.]

owner of an automobile used for his pleasure and convenience is not so unreasonable as to render its condemnation as a police regulation necessary, the presumption being that it is reasonable.

Same—What Matters Immaterial in Determining Character of License Fees.

8. The facts that the net automobile license fees paid over to the several counties by the state are converted into the road fund and that any expense of enforcing Chapter 75 is paid from revenue derived from general taxation is of no consequence in determining the character of the fees.

Same—Statute—Unity of Title of Act—Constitution.

9. Chapter 75 is not invalid so far as it assumes to impose a license fee upon owners of motor vehicles, for failure to indicate in its title a purpose to impose a charge of any kind, the unity of title to an Act required by section 23, Article V of the Constitution, being observed if the various provisions of the Act are germane to the general subjects expressed in the title.

*Appeal from District Court, Fallon County; Stanley E. Felt, Judge.*

JAMES PEPPER was convicted of driving a motor vehicle without a license, and appeals. Affirmed.

*Mr. C. A. Spaulding* and *Mr. Al. Hansen,* for Appellant, submitted a brief; *Mr. Spaulding* argued the cause orally.

It is the contention of appellant that the motor vehicle statute provisions violate said section 4 of Article XII of the Constitution, because they assume to and do levy a tax upon the inhabitants or property in the various counties of the state for county purposes. (*State* v. *Gowdy,* 62 Mont. 119, 203 Pac. 1115; *San Francisco* v. *Liverpool L. & G. Ins. Co.,* 74 Cal. 113, 5 Am. St. Rep. 425, 15 Pac. 380; *Mid Northern Oil Co.* v. *Walker,* 65 Mont. 414, 211 Pac. 353; *Hilger* v. *Moore,* 56 Mont. 146, 182 Pac. 477; *Johnson* v. *City of Great Falls,* 38 Mont. 369, 99 Pac. 1059.)

One of the best criterions for determining whether a statute was intended as a revenue measure or an exercise of the police power is whether it contains regulatory provisions to be exercised by the authority imposing the exaction. (*Wheeler* v. *Plumas County,* 149 Cal. 782, 87 Pac. 802; affirmed in 196 U. S. 562, 49 L. Ed. 599, 25 Sup. Ct. Rep. 316 [see, also, Rose's U. S. Notes]; *Town of Santa Monica* v. *Guidinger,* 137 Cal. 658, 70 Pac. 732; *Cashe County* v. *Jensen,* 21 Utah, 207, 61

Pac. 303; *Chaddock* v. *Day,* 75 Mich. 527, 13 Am. St. Rep. 468, 4 L. R. A. 809, 42 N. W. 977; *People* v. *Wilson,* 249 Ill. 195, 94 N. E. 141.)

Furthermore, in the exercise of the police power only such sums can be exacted as license fees as are sufficient to effectuate the supervision or regulation contemplated by the authority imposing the same. If any substantially greater sum is imposed than suffices for such regulatory purposes, the enactment cannot find justification under the police power of the state. (Cooley's Constitutional Limitations, 242; *Placer County* v. *Whitney,* 2 Cal. App. 614, 84 Pac. 277; *Ex parte McCoy,* 10 Cal. App. 116, 101 Pac. 419; *Wisconsin Tel. Co.* v. *Milwaukee,* 126 Wis. 1, 110 Am. St. Rep. 886, 1 L. R. A. (n. s.) 581, 104 N. W. 1009; *Ottumwa* v. *Zekind,* 95 Iowa, 622, 58 Am. St. Rep. 477, 29 L. R. A. 734, 64 N. W. 646; *Michigan Tel. Co.* v. *Benton Harbor,* 121 Mich. 512, 47 L. R. A. 104, 80 N. W. 386; *Robinson* v. *Norfolk,* 108 Va. 14, 128 Am. St. Rep. 934, 15 L. R. A. (n. s.) 294, 60 S. E. 762; *Hoefling* v. *San Antonio,* 85 Tex. 228, 16 L. R. A. 608, 20 S. W. 85; Cooley on Taxation, 2d ed., 598; *State* v. *Moore,* 113 N. C. 697, 22 L. R. A. 472, 18 S. E. 342; Tiedeman on Police Powers, p. 278; *Muhlenbrinck* v. *Commssioners,* 42 N. J. L. 364, 36 Am. Rep. 518; *Stamp* v. *Burk,* 83 Ark. 351, 104 S. W. 153.)

The Act is likewise invalid as to appellant and as to its revenue raising provisions because it contravenes section 23 of Article V of the Constitution; its title being insufficient (*Western Ranches Co.* v. *Custer County,* 28 Mont. 278, 72 Pac. 659; *State* v. *Brown,* 29 Mont. 179, 74 Pac. 366; *State* v. *Cunningham,* 35 Mont. 547, 90 Pac. 755; *Northwestern Mfg. Co.* v. *Chambers,* 58 Mich. 381, 55 Am. Rep. 693). The title of an Act of the legislative assembly defines its scope, and under the terms of section 23 of Article V of our Constitution it can contain no valid provision beyond what is there stated. (*State* v. *Silver,* 9 Nev. 227; *Ellis* v. *Hutchinson,* 70 Mich. 154, 38 N. W. 14; *Ex parte Thomason,* 16 Neb. 238, 20 N. W. 312; *Vernor* v. *Secretary of State,* 179 Mich. 167, 146 N. W. 338.) The title to the Act under consideration not having in any manner

referred to the intention to raise revenue, that portion thereof providing for a license tax to be covered into the road funds of the respective counties is clearly invalid.

*Mr. Wellington D. Rankin,* Attorney General, and *Mr. L. V. Ketter,* Assistant Attorney General, submitted a brief; *Mr. L. A. Foot,* Assistant Attorney General, argued the cause orally.

Appellant argues that inasmuch as the law provides that all of the funds received by way of registration fees shall after deducting the actual cost of making and mailing all licenses, *etc.,* be transmitted to the various counties to be deposited to the general road fund of said counties, this constitutes the Act a revenue measure, designed solely to increase the road funds of the various counties. The courts hold otherwise. (*Cleary* v. *Johnston,* 79 N. J. L. 49, 74 Atl. 538; *State* v. *Ingalls,* 18 N. M. 211, 135 Pac. 1177; *Atkins* v. *State Highway Department* (Tex. Civ.), 201 S. W. 226; *Bozeman* v. *State,* 7 Ala. App. 151, 61 South. 604; *Kennamer* v. *State,* 150 Ala. 74, 43 South. 482; *Ex parte Shaw,* 53 Okl. 662, 157 Pac. 900.)

The Act can be sustained as a valid exercise of the police powers of the state. As such it does not contravene section 4, of Article XII of the Constitution. The police power of the state is not within the purview of the said provision. (*Johnson* v. *City of Great Falls,* 38 Mont. 369, 99 Pac. 1059.)

In some states where the matter was properly before the courts upon facts in evidence sufficient to warrant them in determining that the amount of the fee was of such magnitude as to be in excess of the cost of regulation, similar statutes have been held to be revenue measures (*State* v. *Ingalls,* 18 N. M. 211, 135 Pac. 1177; *State* v. *Kane,* 81 N. J. L. 594, 80 Atl. 453; *Ex parte Kessler,* 26 Idaho, 764, Ann. Cas. 1917A, 228, 146 Pac. 113; *Ex parte Schuler,* 167 Cal. 282, Ann. Cas. 1915C, 706, 139 Pac. 685) ; in others to be police regulations (*Ard* v. *People,* 66 Colo. 480, 182 Pac. 892; *Camas Stage Co.* v. *Kozer,* 104 Or. 600, 209 Pac. 95; *Atkins* v. *State Highway Dept.* (Tex. Civ.), 201 S. W. 227; *Ex parte Shaw,* 53 Okl. 654, 157 Pac. 900; *Cleary* v. *Johnston,* 79 N. J. L. 49, 74 Atl. 538; *Boseman* v. *State,* 7 Ala.

App. 151, 61 South. 604; *Newport* v. *Merkle* (Ky.), 161 S. W. 549.) In none of the cases was it held that the registration fee was a tax upon persons or property, except in one, that of *Ex parte Schuler, supra.* That case stands alone, and even there the Act was sustained except as to that provision for the distribution of the moneys to the highways of the state.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

James Pepper was convicted of a misdemeanor in a justice of the peace court of Fallon county and appealed to the district court, where he was again convicted, and from that judgment he appealed to this court.

The cause was tried in each instance upon the following agreed statement: "The defendant, James Pepper, operated and drove upon the public highway in the county of Fallon and state of Montana a Ford truck and a Ford touring car during the entire season of 1923, to and including the twenty-sixth day of July, 1923, without having registered said motor vehicles or procured 1923 license or number plates."

By this appeal an attack is made upon the validity of the motor vehicle statute, enacted in 1917 (Chap. 75, Laws of 1917). [1, 2] The Act was amended in 1919 and 1921 and as thus amended is now found in Chapters 134 and 135, sections 1742–1763, Revised Codes of 1921. Section 6 of the Act (sec. 1760, Rev. Codes) was amended again in 1923 and that amendment is now found in Chapter 107, Laws of 1923. The amendments are not material to the determination of the questions presented upon this appeal, and for convenience the statute will be referred to as Chapter 75, Laws of 1917. Speaking in general terms, it provides that the secretary of state shall be registrar of motor vehicles; that every resident owner of such a vehicle shall annually, on or before January 1, apply to the registrar for registration of his vehicle and pay the prescribed fee; that the registrar shall issue to the owner a certificate of registration and two number plates; that every such vehicle, when driven upon the public highways of the state, shall display

such number plates, one in front and one in the rear; and that a violation of any of the provisions of the Act shall constitute a misdemeanor. For vehicles other than trucks the fees are graduated according to horse-power, while for a truck the amount of the fee is made to depend upon its rated carrying capacity.

Before the amendment of 1923 the Act required the registrar to deduct from the total fees received the cost of making and mailing the licenses, certificates, license plates, and identification marks, and transmit one-half of the remainder to the county from which the registration came, for deposit to the credit of the general road fund of the county, and the other half to the state treasury for credit to the state highway fund. Under the amendment of 1923 the entire amount, after deducting the items of cost above, is transmitted to the county from which the application came, for deposit to the general road fund of the county.

It is the contention of the defendant that the Act is invalid as to him and others similarly situated—that is to say, a private individual operating his own motor car for pleasure or convenience and not engaged as a dealer in motor vehicles or in operating such vehicles for hire: First, because it is a revenue measure; second, because the defendant was not engaged in "doing business in the state" within the meaning of that expression found in section 1, Article XII, of the state Constitution; and, third, because it cannot be justified as a police regulation.

We enter upon our investigation of the subject indulging the presumption that the Act is a valid legislative enactment, and the defendant must sustain the burden of showing that it is unconstitutional beyond a reasonable doubt. However, we agree with him that he is not subject to an occupation tax permissible under section 1, Article XII, of the Constitution, and hence this Act must be justified upon some other ground, if at all. We may go further and assume that, if this statute is a revenue measure, it imposes a tax upon the inhabitants or property in the several counties of the state for county purposes, in

violation of the prohibition contained in section 4, Article XII, of the Constitution. On the contrary, if the Act is a reasonable police regulation it must be conceded that it is a valid enactment; hence the ultimate question arises: Is it a revenue measure or a reasonable police regulation?

The history of the legislation upon the subject is of some interest as indicative of the legislative intention in enacting the statute. The Thirteenth Legislative Assembly enacted Chapter 71, Laws of 1913, by the terms of which every owner of a motor vehicle was required to pay annually a license fee graduated according to the horse-power of the vehicle. Section 1 of that Act declared that the purpose was to raise "revenue for the constructing, maintenance, and improvements of public highways." It was manifestly a revenue measure, without any regulatory provisions whatever, and was declared to be invalid by the attorney general in an opinion rendered July 22, 1913, and no attempt was made to enforce it thereafter. At the same session Chapter 73, Laws of 1913, was enacted, which was apparently intended as a police regulation. It required an annual registration fee of $2 for each motor vehicle and contained numerous regulatory provisions. This Act, with a slight amendment made in 1915 (Chap. 65, Laws of 1915), continued in force until superseded by Chapter 75, which in terms repealed both of these former Acts. It is particularly noteworthy that in drafting the present statute, the legislature departed from the theory of Chapter 71 above, and follows closely the provisions of Chapter 73. While this is but a circumstance reflecting the purpose of the legislature, in the light of the history any presumption that Chapter 75 was intended as a revenue measure would be a violent one, to say the least. Furthermore, the title and body of the Act seem to indicate a legislative intention to invoke the general police power of the state. The Act is entitled: "An Act to provide for the registration and identification of motor vehicles and operators thereof, and providing for the regulation of all vehicles operating upon the public highways of the state and providing penalties for the violation of the provisions of this Act, and

providing for the disposition of all funds collected thereunder," *etc.* In addition to the administrative feature referred to above, the Act prescribes somewhat elaborate speed and traffic regulations, the necessary accessories required to be furnished by the owner of a motor vehicle driven upon the public highways, the reports of violations of the Act to be made, and then among other things declares: "It is hereby made mandatory upon all peace and police officers of the state, of the counties of the state and of towns, cities and villages, to carry out the provisions of this Act and arrest the drivers or owners of any motor vehicle being used or driven in violation of any of the provisions of this Act." (Sec. 11, subd. (c).)

In *State ex rel. City of Bozeman* v. *Police Court,* 68 Mont. 435, 219 Pac. 810, we announced the general rule as follows: "Where [3] the fee is imposed for the purpose of regulation and the statute requires compliance with certain conditions in addition to the payment of the prescribed sum, such sum is a license proper imposed by virtue of the police power; but when it is exacted solely for revenue purposes without any further condition it is a tax."

On the face of the Act it appears to meet the requirements of this rule and justifies the characterization of it as a police regulation, or, stated differently, it cannot be said from an inspection of the Act alone that it is a revenue measure.

It is unnecessary to cite authorities which hold that the [4] operation of motor driven vehicles upon the public roads is a proper subject of police regulation. In their brief counsel for defendant state frankly: "This defendant does not contend that the state has no right to require the owners of motor vehicles who drive them upon the public highways to register them; nor does he contend that in and about such registration the state cannot require the payment of the actual cost of such registration. * * * Both registration and regulation could be sustained under the police power," *etc.* But the contention is made that this Act cannot be justified as a police regulation [5] because the fee exacted is far in excess of the reasonable expense of regulation. In their brief counsel make this state-

ment as a base from which to direct the attack: "It [the Act] produces more than half a million dollars per year." But there is not anything in the record to justify that statement or to indicate the number of motor vehicles in the state, the amount of the fee exacted from each one, the cost of administering the law, the net amount paid over to the counties or the cost of enforcing the Act. This court cannot take judicial notice of any of these matters (sec. 10532, Rev. Codes; *McKnight* v. *Oregon Short Line R. Co.,* 33 Mont. 40, 82 Pac. 661), and, if the fee is so unreasonable as to condemn the Act as a police regulation, the fact must appear from the Act itself, so far as this appeal is concerned.

In *State ex rel. City of Bozeman* v. *Police Court,* above, we said: [6] "It is the general rule that the license fee required by an ordinance designed as a police regulation must not exceed the cost of issuing the license and the additional cost of inspection and supervision. However, this rule is subject to the qualification that the licensing authority is not limited, in fixing the amount of the fee, to the expense of direct regulation alone, but may adjust the fee to cover the cost of all incidental consequences which may reasonably subject the public to expense as a result of the conduct of the business licensed. (17 R. C. L. 539.) The nature of the business and the necessity, character and extent of the regulations are the dominating elements which determine the reasonableness of the fee to be paid. (3 McQuillin on Municipal Corporations, sec. 1002; 17 R. C. L. 544.)

"Cases may arise wherein it is possible for a court to say, [7] as a matter of law, that a given fee is out of all reasonable proportion to the expense of proper police inspection and supervision, as was done in *Smith* v. *Mahoney,* 22 Ariz. 432, 197 Pac. 704, but such is not the case before us. In considering a somewhat similar ordinance under like circumstances, the supreme court of Washington said: 'The amount of the license fee fixed by the ordinance for the business of pawnbroking is $100 per annum. There is nothing in the record to show what the actual costs are, or what a reasonable charge would be, for

enforcing the regulations prescribed, and we are asked to say, as a matter of law, that the amount fixed is so far in excess of any sum that could be legitimately charged for regulating the business as to enter the domain of taxation. We do not feel that we are authorized to do this in the case before us. It is not doubted that the business of pawnbroking is a proper subject of police regulation, nor is it doubted that it is within the province of the municipal authorities to make the business bear the costs of such regulation. As these costs must be prescribed in advance, they must of necessity be based upon estimates which it is the right and duty of the municipal authorities to make. The courts cannot, therefore, on any mere difference of opinion as to the amount necessary to meet these costs, say that they are excessive. They must be shown to be so by evidence, or else they must be so exorbitant and arbitrary as to leave no room for two opinions on the matter—so exorbitant and arbitrary as to show that they could not have been based upon any possible estimate of the probable cost. The amount of the fee in question here is not subject to these objections. It cannot be said that it will exceed even the actual cost of surveillance, much less can it be said it is excessive or arbitrary.' (*City of Seattle* v. *Barto,* 31 Wash. 141, 71 Pac. 735.) So likewise in this instance, the presumption is that the fee is reasonable until the contrary appears (17 R. C. L. 537), and in the absence of anything in this record to indicate that the fee exacted from persons engaged in the business of operating motor vehicles for hire exceeds the reasonable cost of proper supervision of the business, the ordinance is not open to the charge that it is unreasonable." The language is peculiarly applicable here, and the decision in that case is determinative of the question now under consideration in this one.

In Berry on Automobiles, third edition, section 104, the general rule is stated as follows: "While the power to tax is not included in the police power of the state, and any attempt to create revenue under the guise of police regulation will be declared invalid by the courts, the fact that the public treasury is incidentally augmented by the fee paid for an automobile

license will not have the effect of making such license fee a tax. The fee will not be declared illegal on this account if, under all the circumstances, it is not wholly unreasonable."

In *Hendrick* v. *Maryland*, 235 U. S. 610, 59 L. Ed. 385, 35 Sup. Ct. Rep. 140 [see, also, Rose's U. S. Notes], the validity of the Maryland motor vehicle law was called in question. The license fee from $6 to $18 was graduated according to horse-power. The question now under consideration was treated at length, particularly with reference to interstate commerce. The court said: "The movement of motor vehicles over the highways is attended by constant and serious dangers to the public, and is also abnormally destructive to the ways themselves. * * * The amount of the charges and the method of collection are primarily for determination by the state itself; and so long as they are reasonable and are fixed according to some uniform, fair and practical standard they constitute no burden on interstate commerce [citing cases]. The action of the state must be treated as correct unless the contrary is made to appear. In the instant case there is no evidence concerning the value of the facilities supplied by the state, the cost of maintaining them, or the fairness of the method adopted for collecting the charges imposed; and we cannot say from a mere inspection of the statute that its provisions are arbitrary or unreasonable."

Upon this appeal we shall not undertake to itemize the elements which may enter into a determination of the amount of the fees which may be exacted under a reasonable police regulation, nor shall we undertake to say what are the "incidental consequences which may reasonably subject the public to expense as a result of the" operation of motor driven vehicles upon the public highways. From an inspection of this Act alone it cannot be said that the fees exacted exceed the reasonable expense of administration and enforcement, and, in failing to show by evidence that the fees are exorbitant, defendant has failed to show that the Act is unreasonable.

In Berry on Automobiles, third edition, section 102, it is said: "What is a reasonable fee must depend largely upon the

sound discretion of the legislature, having reference to all the circumstances and necessities of the case. It will be presumed that the amount of the fee is reasonable unless the contrary appears upon the face of the law itself or is established by proper evidence."

The fact that the net fees paid over to the several counties [8] are converted into the road fund and that any expense of enforcing this Act is paid from revenue derived from general taxation is of no consequence in determining the character of the fee. (*Cleary* v. *Johnston,* 79 N. J. L. 49, 74 Atl. 538; *State* v. *Hipp,* 38 Ohio St. 199; *State ex rel. Troll* v. *Hudson,* 78 Mo. 302; Berry on Automobiles, 3d ed., sec. 105.)

Finally it is urged that the Act is invalid so far as it assumes [9] to impose a license fee, because the title does not indicate a purpose to impose or exact a charge of any character. The decision of this court in *State* v. *McKinney,* 29 Mont. 375, 74 Pac. 1095, is conclusive against the contention. While it is true that the title does not in express terms refer to a fee or charge to be exacted, the unity of title required by section 23, Article V, of the Constitution, is observed notwithstanding the existence of many provisions in the body of the Act, if such provisions are germane to the general subject expressed in the title. (*Hotchkiss* v. *Marion,* 12 Mont. 218, 29 Pac. 821. See also, *Jackson* v. *Neff,* 64 Fla. 326, 60 South. 350.)

The judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES COOPER, GALEN and STARK concur.