STATE EX REL. BOONE, RELATOR, v. TULLOCK, SHERIFF.

(No. 5,703.)

(Submitted February 19, 1925.   Decided March 10, 1925.)

[234 Pac. 277.]

*Habeas Corpus—Banks and Banking—Accepting Deposits When Bank Insolvent—Bank Act—Statutes and Statutory Construction—Rules—Constitution—Title to Act—Sufficiency.*

Banks and Banking—Regulation — Statutes — Constitutionality — Sufficiency of Title.
    1. *Held*, on *habeas corpus*, that the Bank Act (Chap. 89, Laws of 1915) as amended by Chapter 90, Laws of 1923 (sec. 6081, Rev. Codes 1921), under which complainant was convicted of accepting deposits when his bank was insolvent, is not open to the charge of unconstitutionality on the ground that the titles of both the original and the amendatory Acts are insufficient to meet the requirements of section 23, Article V, of the Constitution; *held*, further, that by the enactment of Chapter 90, Laws of 1923, section 6078, Rev. Codes, providing the method for determining the insolvency of a bank, was not repealed by implication.

Statutes and Statutory Construction—Conflicting Provisions—Last in Order of Arrangement Controlling, When.
    2.   Where two provisions of an Act are conflicting and cannot be harmonized, the last in order of arrangement is controlling.

Same—Statutes Dealing With Same Subject must be Harmonized.
    3.   Where one statute deals with a subject in general and comprehensive terms, and another deals with a part of the same subject in a more minute and definite way, the two should be read together and harmonized, if possible.

Same—Intention of Legislature to be Pursued in Construing Statute.
    4.   In the construction of a statute the intention of the legislature must, if possible, be pursued, regard being had not only to the words employed, but also to the evil to be remedied.

Same—Statute Susceptible of Two Constructions—Rule.
    5.   Of two admissible constructions of a statute, the courts are never justified in adopting the one which defeats the manifest object of the law.

Banks and Banking—Insolvency—Statute Construed.
    6.   Subsection 10, section 1 of Chapter 90, Laws of 1923, amendatory of the Bank Act, providing that a bank is insolvent when its capital surplus and undivided profits are absorbed in losses "and the remaining assets *will not be sufficient* to discharge" its

---

    1.   Sufficiency of title of statute, see note in 64 **Am. St. Rep.** 70.
    Repeal of statute by implication, see notes in 14 **Am. Dec.** 209; 88 **Am. St. Rep.** 271.
    2.   Irreconcilable statutory provisions, last to be given effect, see notes in 6 **Ann. Cas.** 860; 19 **Ann. Cas.** 149.

[72 Mont. 482.]

debts, construed to mean "and the remaining assets will not [when converted into cash at their present value] be sufficient," *etc.*

Statutes—Constitution—Title to Act—Liberal Construction.

7. In passing upon the constitutionality of an Act attacked on the ground of insufficiency of its title to meet the requirements of section 23, Article V of the Constitution, courts should give that constitutional provision a liberal construction, the title being generally sufficient if it indicates the general subject embraced in the body of the Act, it not being required that it should give details or a complete list of all matters covered by the Act.

Same—Constitutionality Presumed.

8. The constitutionality of an Act is presumed and such presumption controls until its unconstitutionality is shown beyond a reasonable doubt.

Same—Regulation of Business—Penalties Need not be Mentioned in Title to Act.

9. Since penalties provided for in the body of an Act regulating a particular business are but the ends and means for accomplishing its general object, they need not be included in its title.

Same—Title to Act—Provisions Germane to General Subject of Act not Necessary to be Included in Title.

10. Where provisions in an Act are germane to the general subject expressed in the title, the unity of title required by section 23, Article V of the Constitution is observed even though such provisions are not mentioned in the title.

*Habeas Corpus*—Purpose of Writ—Defective Indictment not Subject of Inquiry.

11. On application for writ of *habeas corpus* the court will not determine whether the indictment upon which complainant was convicted was defective, since the writ cannot be used as a substitute for a demurrer or a motion to quash, its inquiry being confined to a determination of the validity of the process on its face and whether the court had jurisdiction of the offense charged.

APPLICATION by Noah Boone for writ of *habeas corpus,* directed to Guy Tullock, Sheriff of Fergus County. Proceeding dismissed.

*Messrs. Belden & DeKalb, Mr. Chas. J. Marshall* and *Mr. Norman R. Barncord,* for Relator, submitted a brief; *Mr. O. W. Belden* argued the cause orally.

---

7. Effect on statutes of constitutional provision requiring to embrace but one subject and that expressed in title, see notes in 61 **Am. Dec.** 337; 79 **Am. St. Rep.** 456.

Construction of constitutional provisions relating to titles of statutes, see notes in 1 **Ann. Cas.** 584; **Ann. Cas.** 1915A, 79.

8. When statutes declared void for conflict with Constitution, see note in 48 **Am. Dec.** 269.

9. Validity of Act providing for penalty not mentioned in title, see note in **Ann. Cas.** 1912D, 157.

10. Insufficiency of title as affecting validity of statute, see note in **Ann. Cas.** 1916D, 28.

*Mr. L. A. Foot,* Attorney General, and *Mr. I. W. Choate,* Assistant Attorney General, for Respondent, submitted a brief; *Mr. I. W. Choate* argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

Relator was indicted by a grand jury of Fergus county, charged with having, as president of a certain bank, permitted it, while insolvent, to accept a deposit of money and place the same in the general assets of the bank, instead of in a trust fund for the depositor as required by law. Relator was taken into custody under a bench warrant; he is before this court on a writ of *habeas corpus,* the return to which admits his detention and seeks justification under the bench warrant.

The indictment is predicated upon section 6081, Revised Codes of 1921, as amended by Chapter 90, section 3, of the Laws of the Eighteenth Assembly (1923). There is no dispute as to the facts. Relator contends that the above section is unconstitutional in that it does not meet the requirements of section 23 of Article V of the Constitution, that all prior Acts on the subject embraced in the section have been repealed, and that the acts charged in the indictment do not constitute a public offense.

1. It is conceded that all Acts on this subject in existence [1] prior to the passage of Chapter 89, Laws of the Fourteenth Assembly (1915), have been repealed, and therefore the indictment must stand or fall on the validity of that Act, of which section 6081, Revised Codes of 1921, is section 62.

2. The section under consideration, before amendment, provided: "Whenever any bank shall be insolvent or in an impaired condition in the manner described and set forth in section 6078 of this Code, such bank shall not accept or receive on deposit any money   *   *   *   except as trustee for the depositors,

\* \* \* and it or they shall keep all such deposits \* \* \*
separate and apart from the general assets of the bank : \* \* \*
Provided, that in the event such impairment or insolvency
be not made good or removed within the period stated in the
notice required in section 6078, then \* \* \* such trust
deposits shall be returned to the depositors; \* \* \* that
any officer \* \* \* thereof, who shall knowingly accept
or receive, be accessory to, or permit, or connive at the receiv-
ing or accepting of such trust deposits, except in the manner
hereinbefore set forth \* \* \* shall be deemed guilty of
a felony, and upon conviction thereof shall be punished by
a fine not exceeding ten thousand dollars, or imprisonment
in the state prison not exceeding five years,'' *etc.*

Section 6078, referred to herein, is section 59 of the Act
of 1915, and provides for an examination of banks organized
under the Act, and, if the superintendent of banks shall
find evidence of impairment or insolvency, he shall report
to the governor and attorney general, who, if satisfied that
impairment or insolvency exists, shall order the superin-
tendent of banks to take charge of the bank or to notify
the stockholders to make good the impairment or insolvency
within a specified time.

Chapter 90 of the Acts of the 18th Assembly amended sec-
tion 6081 only to the extent of striking out the words ''section
6078 of this Code'' in the opening paragraph of the section
and substituting therefor the words ''subsection 10 of section
1 of this Act,'' and striking out the words appearing later
in the section ''or removed within the period stated in the
notice required in section 6078.''

Section 1 of Chapter 90, Laws of 1923, is the enactment
of a new section to the ''Bank Act,'' designated ''Section
6014a. Definitions''—clearly designed to clarify the mean-
ing of the original Act by defining various words and terms
used therein. Subsection 10 reads as follows: ''A bank is in-
solvent within the meaning of this Chapter when all of its

capital surplus, and undivided profits are absorbed in losses and the remaining assets will not be sufficient to pay and discharge its contracts, debts and engagements.''

Counsel for relator urge that it was the intention of the legislature to substitute this provision for section 6078; that the two cannot be harmonized and, therefore, section 6078 is repealed by implication; that subsection 10, section 1, is not within the title to Chapter 90, and therefore, like Chapter 89, Laws of 1915, is unconstitutional, and no method is left for the determination of insolvency.

It is true that the amendment to section 6081 substitutes the words ''subsection 10 of section 1'' of the Act of 1923 for ''section 6078,'' in section 6081, but by so doing the legislature did no more than to declare the *fact* of insolvency the basis of the inhibition and consequent liability for its violation, in lieu of basing such inhibition and prosecution upon the finding and notice of insolvency. Such a substitution does not, however, necessarily lead to the conclusion that the legislature intended thereby to do away with action looking to a determination of insolvency, nor repeal section 6078 by implication. The fact of insolvency, if it exists, is present regardless of action or nonaction on the part of the superintendent of banks.

It is the rule, of course, that where two provisions of an [2, 3] Act of the legislature are conflicting and cannot be harmonized, the last in order of arrangement controls. (*State ex rel. Koefod* v. *Board of Commissioners,* 56 Mont. 355, 185 Pac. 147.) But where there is a statute dealing with a subject in general and comprehensive terms, and another dealing with a part of the same subject in a more minute and definite way, the two should be read together and harmonized, if possible. (*State ex rel. Esgar* v. *District Court,* 56 Mont. 464, 185 Pac. 157.)

Invoking this latter rule, we find no inconsistency here. The superintendent of banks may still proceed as in section 6078

provided, and an action be prosecuted under section 6081 on the *fact* of insolvency, after such proceedings are had, as such determination and notice as are there provided for do not affect the actual condition of the bank existing either then or theretofore.

3. The wording of subsection 10, section 1, of the Act of [4, 5] 1923, is not as clear as it might be, in that it is not specific as to the time when the "remaining assets will not be sufficient to pay and discharge the debts." However in the construction of a statute, the intention of the legislature is to be pursued, if possible. (Sec. 10520, Rev. Codes 1921; *Lerch* v. *Missoula B. & T. Co.* 45 Mont. 314, Ann. Cas. 1914A, 346, 123 Pac. 25; *State ex rel. Carter* v. *Kall,* 53 Mont. 162, 5 A. L. R. 1309, 162 Pac. 385.) And we must look not only to the words employed, but also to the evil to be remedied. (*Johnson* v. *Butte & Superior C. Co.,* 41 Mont. 158, 48 L. R. A. (n. s.) 938, 108 Pac. 1057.) Of two admissible constructions of a statute, the courts are never justified in adopting the one which defeats the manifest object of the law. (*Wilkinson* v. *La Combe,* 59 Mont. 518, 197 Pac. 836.)

In enacting this subdivision or definition, the legislature had [6] a definite purpose in view. That purpose was clearly to provide a rule by which the insolvency of any bank could be determined at any given time. The intention was, manifestly, to designate a time to which proof of insolvency could be directed in an action arising out of a violation of the provisions of the Act, of which that subsection was made a part. That intention and purpose could only be carried out by placing on the statute books a definition, every phrase of which referred to but a single instant of time.

It cannot be that the legislature intended that its reference to absorption of the capital, surplus and undivided profits should be in the present tense, and the provision as to the remaining assets should refer to some time in the future. But, having in mind the nature of the remaining assets, after what may be termed the liquid assets have been absorbed in

losses, it seems reasonable to presume ·that the phrase "will not be sufficient," though appearing in the Act in the future tense, was intended to refer to the then value of such assets, admitting that such value could not, at that time, be applied to pay and discharge the debts and liabilities of the bank.   This being the intention of the legislature, manifested by the purpose to be accomplished, the wording of the provision and the evils to be remedied by the Act of which this subsection is a part, the definition is construed as though it read "and the remaining assets will not be [when converted into cash at their present value] sufficient to pay and discharge its contracts, debts, and engagements."   This is but the reasonable construction of the statute, and, when so construed, the Act furnishes a concise rule for determining the insolvency of a bank at any given time.

4. We enter upon a determination of the question as to [7, 8] .the constitutionality of the Act of 1915 bearing in mind the principles governing our consideration thereof heretofore announced by this court.

In the case of *State* v. *McKinney*, 29 Mont. 375, 1 Ann. Cas. 579, 74 Pac. 1095, is found a summary of the rules theretofore announced by this and other courts, in five "general principles" with reference to this constitutional provision, *viz.*:

(1) The purposes of the provision are to prevent the enactment of laws surreptitiously; to give notice to the legislature and to the people that they may not be misled; to guard against fraud in legislation.

(2) The courts should give to this provision a liberal construction, so as not to interfere with or impede proper legislative functions.

(3) "The legislature is the judge, to a great extent, at least, of the title which it will prefix to a bill; and the court has no right to hold a title void because, in its opinion, a better one might have been used."

(4) "The title is generally sufficient, if the body of the Act treats only, directly or indirectly of the subjects men-

tioned in the title, and of other subjects germane thereto, or of matters in furtherance of or necessary to accomplish the general objects of the bill, as mentioned in the title. Details need not be mentioned. The title need not contain a complete list of all matters covered by the Act.''

(5) ''If the court, after an application of all these principles, is still in doubt as to the constitutionality of the bill, it should sustain the Act.''

To these principles were added:

(6) This provision of the Constitution relates to matters of substance and not merely to matters of form.

(7) ''If a title fairly indicates the general subject of the Act, is comprehensive enough in its scope reasonably to cover all the provisions thereof, and is not calculated to mislead either the legislature or the public, this is a sufficient compliance with the constitutional requirement.'' (*Evers* v. *Hudson,* 36 Mont. 135, 92 Pac. 462.)

To these two general principles, since announced, should be added:

(8) The constitutionality of a statute is presumed, and construction consonant with constitutionality is favored. (*State ex rel. Bankers' Trust Co.* v. *Walker,* 70 Mont. 484, 226 Pac. 894.)

(9) The presumption of constitutionality controls until, or unless, the party attacking the Act convinces the court of its unconstitutionality beyond a reasonable doubt. (*State* v. *Pepper,* 70 Mont. 596, 226 Pac. 1108.)

The constitutionality of any Act providing, in the body of the bill, penalties for the violation of the provisions of [9] the Act without mentioning such penalties in the title thereto, has been set at rest in *State* v. *Bernheim,* 19 Mont. 512, 49 Pac. 441, and *In re Terrett,* 34 Mont. 325, 86 Pac. 266. In the *Bernheim Case* it is said: ''Experience amply demonstrates that to regulate a particular business by law, and put a statute regulating it into practical and effective operation, there must be punishments prescribed and imposed

upon those who violate its commands. But such penalties need not be included in the title, for they are but 'ends and means necessary or convenient for the accomplishment of the general object.' "

The reasoning leading to the above conclusion applies with **[10]** equal force to any "ends and means necessary or convenient for the accomplishment of the general object" and, aside from the question of penalties, it has been repeatedly held in this state that the unity of title required by section 23, Article V, of our Constitution is observed notwithstanding the inclusion, in the body of the bill, of many provisions not mentioned in the title thereto, if such provisions are germane to the general subject expressed in the title. (*Hotchkiss* v. *Marion*, 12 Mont. 218, 29 Pac. 821; *Beckstead* v. *Montana etc. Ry. Co.*, 19 Mont. 147, 47 Pac. 795; *State* v. *Bernheim, supra; Snook* v. *Clark*, 20 Mont. 230, 50 Pac. 718; *State* v. *Anaconda Copper Min. Co.*, 23 Mont. 498, 59 Pac. 854; *Yegen* v. *Board of County Commrs.*, 34 Mont. 79, 85 Pac. 740; *Evers* v. *Hudson, supra; Carlson* v. *City of Helena*, 39 Mont. 82, 17 Ann. Cas. 1233, 102 Pac. 39; *State ex rel. Hay* v. *Alderson*, 49 Mont. 387, Ann. Cas. 1916B, 39, 142 Pac. 210; *State* v. *Pepper, supra.*)

In a number of these cases the court has indicated the nature of such matters "germane to the subject," and in 25 R. C. L., p. 844, the "subject" of an Act is defined as "the matter or thing forming the groundwork of the Act." The remaining provisions are but the machinery provided for the purpose of rendering the subject or groundwork of the Act effective; the "ends and means necessary or convenient for the accomplishment of the general object."

In *State* v. *Bernheim, supra*, the Act attacked was entitled: "An Act to regulate the sale and redemption of transportation tickets of common carriers." The body of the bill provided for certificates of appointment of agents to sell such tickets, the issuance of a license on payment of a license fee and exhibition of the certificate; the posting of the certificate and license,

and made it unlawful for any person to sell tickets without such license and provided a penalty for violation. It was held that there was no merit in the point that the subject of the Act was not clearly expressed in the title.

In *Beckstead* v. *Montana etc. Ry. Co.* and *Snook* v. *Clark* the Act under consideration was entitled "an Act requiring railroad companies to pay for damages to stock," while the body of the Act required such companies to fence their tracks and to install cattle-guards for the protection of stock. In each of these cases the railway company contended, as here, that the title does not clearly express the subject of the Act. In the *Beckstead Case* the court contented itself with the declaration that the Act was constitutional, and in the *Snook Case* it merely stated that the question was passed upon in *State* v. *Bernheim, supra,* and that "the constitutionality of the law in question was sustained also by this court in *Beckstead* v. *Montana etc. Ry. Co.,*" etc.

The decision in *State* v. *McKinney, supra,* upholds the constitutionality of an Act entitled "An Act to create the office of meat and milk inspector for the state of Montana, and prescribing their powers and duties and compensation therefor," while the body of the Act provided for the licensing of certain dairymen and the regulation of their business.

Dealing generally with this subject, the author, in Ruling Case Law says: "A title need not disclose the means and instrumentalities provided in the body of the Act for accomplishing its purpose, where all the provisions are reasonably necessary as means for attaining the object of the Act indicated by the subject which is expressed in the title, as subdivisions of the general subject there stated." (25 R. C. L., p. 868, citing numerous cases.) And specifically: "Where an Act provides for the organization of a corporation, it may include any provisions relating to the operation, regulation, control and maintenance of the corporation." (*Id.,* p. 845, citing *Clendaniel* v. *Conrad,* 3 Boyce (Del.), 549, Ann. Cas. 1915B, 968, 83 Atl. 1036.)

"Provisions for the individual liability of stockholders or making directors liable for the debts of the corporation for failure to file reports or for making false reports or certificates, are germane to the subject of creating corporations." (Lewis' Sutherland, Statutory Construction, 2d ed., vol. 1, p. 262.)

The Act under consideration, entitled as it is, provides for the creation and regulation of banks and banking corporations. The broad generic title clearly expresses the subject or groundwork of the Act, and, in order to effectuate the regulation of such institutions, provides the machinery for determining when such institutions are in an insolvent or impaired condition, and when the banking department of the state, mentioned in the title, shall have to do with the regulation. Corporations can act only through human agencies, and, if such institutions violate the provisions for their regulation, the punishment should, justly, fall upon those responsible for the conduct of the business in such manner as is violative of the Act.

The provisions complained of are, therefore, but "ends and means necessary or convenient for the accomplishment of the general object" and clearly germane to the subject expressed in the title. This being so, we cannot say that either the members of the legislature or the public could have been misled by the omission of those matters from the title, which fully advised all parties interested therein that the legislature proposed to provide for the creation and regulation of banks and banking corporations, and to create a banking department for the purpose of such regulation. The remaining provisions logically follow as the machinery by which this purpose is to be accomplished.

What is heretofore said regarding the title to the "Bank Act" (Chap. 89, Laws of 1915), including, as it does, section 6081, Revised Codes of 1921, applies with equal force to Chapter 90, Laws of 1923, amending that section and defining "insolvency," its title being more comprehensive than that of the original Act.

5. On his assignment that the indictment does not charge the commission of a public offense, in addition to reasserting the unconstitutionality of the Act, relator contends that the indictment does not charge that the insolvent condition of the bank was known to the officers and directors at the time of the acceptance of the deposit as alleged; that it does not charge a specific intent, and that, under the present chaotic condition of the law, there is no method provided for determining insolvency.

(a) The first and the last of these contentions, attacking the law and not the indictment, have already been disposed of.

(b) As the statute is constitutional and provides that failure to obey its mandates constitutes a public offense, a sufficient indictment can be drawn under its provisions. Without passing on the sufficiency of the indictment, we observe that it follows the wording of the statute, practically *verbatim,* and charges that the acts complained of were committed "wrongfully, unlawfully, knowingly and feloniously."

However, even conceding that the indictment is defective [11] in charging the offense alleged, such defect cannot avail the relator in this proceeding. The purpose of the writ of *habeas corpus* is to determine the question: Is the imprisonment or restraint legal? The court can go no further in this proceeding than to inquire as to the validity of the process on its face and the jurisdiction of the court, which raises the question as to the constitutionality of the law under which the court is attempting to proceed and the process it issued, and discharge the relator if he brings himself within the provisions of section 12362 of the Revised Codes of 1921.

The rule is clearly stated in Ruling Case Law as follows: "It is well settled that * * * where an indictment has been found which, although subject to attack and overthrow upon a demurrer, contains enough to show that an offense has been committed of which the court has jurisdiction, the

party charged cannot be discharged on writ of *habeas corpus,* but will be remitted to the court in which the indictment is pending for such proceedings as the law may warrant by way of defense. The writ cannot be used as a substitute for a demurrer or motion to quash." (12 R. C. L. 1190, sec. 13; see, also, 100 Am. St. Rep. 35.)

The proceeding is dismissed, and the prisoner remanded to the custody of the sheriff of Fergus county.

*Dismissed.*

MR. CHIEF JUSTICE CALLAWAY, ASSOCIATE JUSTICES HOLLOWAY and STARK, and HONORABLE C. W. POMEROY, District Judge, sitting in place of MR. JUSTICE GALEN, absent on account of illness, concur.